G. CHOPHARD & SON, Plaintiffs in Error, *vs.* T. W. BAYARD & Co., Defendants in Error.

ERROR TO THE DISTRICT COURT OF RAMSEY COUNTY.

An insolvent sold all his goods not exempt from execution, to one of his creditors, by an instrument which provided that he (the vendor) might retain possession of the goods, and sell and dispose of the same in the usual course of business, either at wholesale or retail, but not at less than a certain price mentioned in a schedule to the instrument, and to account to the vendees at any and all times for the proceeds of such sales, the vendees agreeing to apply such proceeds to the payment of their claim against the vendor. That the vendor should not sell or encumber the goods except by regular sale at wholesale or retail, for cash, and account for such sale whenever called upon by the vendees; with the right to the vendees to take absolute possession of all the goods at any time, unless their claim had been paid in full. *Held*—That such an instrument hindered and delayed creditors in their lawful suits and demands, and the sale is void as to them.

Points and authorities of Plaintiffs in Error:

*First.*—The mortgage was given to secure notes overdue at the date of the mortgage. It was hence absolute from its date. The execution and delivery of the mortgage being at the time a secret transaction, and remaining so until the mortgagor was sued by the Plaintiffs in Error. And the mortgagor remaining in possession during all the time that elapsed after the date of the mortgage until the levy of the execution, issued upon a judgment of the Plaintiffs, and selling the property as his own, using the proceeds that it did not require to support himself and family, to buy new goods to replenish the stock, and rendering no account to the mortgagees during all this time—the mortgage not providing for the application of the proceeds of the sale of the goods, to the payment of the debt mentioned in the mortgage at any particular time. And the mortgagor having the *discretion* and *right* by a *secret agreement with the mortgagees*, to appropriate all the proceeds of the sales of the mortgaged property to the support of his family, is not only *prima facie* but is conclusive evidence of fraud. 2 *Wend.* 596; 17 *Wend.* 492; 16 *Wend.* 523; 5 *Selden*, 213; 13 *Barbour*, 381; 1 *Kernan*, 501; 3 *Kernan*, 577; *Kent's Commentaries, Vol.* 2, *pp.* 518–520; 5 *Sergt. & Rawle*, 275; 1 *Aiken* (*Vermont*) 116; 2 *id.* 64.

*Second.*—The necessary legal effect of the instrument and transaction between the mortgagor and mortgagees, is to hinder, delay and defraud creditors. Years might elapse before the property could be appropriated to the payment of the debt secured by it. And the mortgagees could take it at anytime upon calling for the same upon the mortgagor, without allowing anything whatever for the same.

*Third.*—The personal property at time of the levy was in the possession of the mortgagor. (*See Folio* 3 *of the Case.*) He had appropriated all the proceeds of sales to the support of his family and the purchase of new goods, and the mortgagees had not called on him for possession. It had all been done with their consent. There was a secret trust, and the transfer was fraudulent as to creditors.

Points and authorities of Defendant in Error:

*First.*—The instrument of conveyance in this case was a chattel mortgage; as Perrinoud's right in the chattels under it was a right of redemption only, a mere chose in action, without the *right* of possession for a *definite* or *fixed period*, he had no interest upon which a levy could be made. *See* 1 *Conn. R.* 297, *Matteson vs. Baucus;* 1 *Kernan, R.* 505, *Hull vs. Camley, and cases cited.*

*Second.*—The only question in the case then is whether the mortgage is valid against the creditors of the mortgagor.

*1st.* It is not invalid under *Chap. 50, of Comp. Statutes,* because not made in trust for the mortgagor. The only stipulation in it for his benefit is as to the right to redeem.

*2d.* So far as the intent in this case depends upon testimony proper for a jury under proposition "A," it has been disposed of by the finding of the referee.

*3d.* And it remains for the Court by construction and interpretation of the mortgage, to find whether it was executed with intent to hinder, delay, or defraud creditors.

*4th.* In construing or interpreting the mortgage, the Court can look to no facts *aliunde* the mortgage, except such as show the situation or condition of the parties and the subject matter at the time of its execution. Those facts are, that Perrinoud was largely indebted to Plaintiff, Defendant and others; that he was insolvent; that the property mortgaged was the whole of his property exempt from execution; that its value was not disproportionate to the debt secured; and the Defendants in error were by far his heaviest creditors.

*Third.*—There are no stipulations in the mortgage different from those ordinarily in chattel mortgages, except that in reference to Perrinoud's retaining possession and selling the chattels, and that is not for his benefit but for the benefit of the mortgagees. Its effect is only to constitute him their agent to foreclose the mortgage by sale of the chattels for cash, in the usual course of business, until they should see fit to revoke his authority and take the goods themselves.

*Fourth.*—The value of the property as charged in the complaint, was $4000, as admitted in the answer, $3200, as shown by the schedule to the mortgage $3181 87.

The debts secured by the mortgage are the notes due
  mortgagees,    -        -        -        -       -    $2806 88
The bills of Datus & Co., and Balen & Co.,     -      796 03
                                                   ———————
                                                   $3602 91

Sanborn & Lund, Counsel for Plaintiffs in Error.

J. & C. D. Gilfillan, Counsel for Defendants in Error.

*By the Court*—Atwater, J.   This action was brought by
T. W. Bayard & Co., against the Plaintiffs in Error; to recover
the value of certain goods, seized by the Defendants below on
an execution against one J. G. Perenoud, as the property of
said Perenoud.   The Plaintiffs below claimed title to the
property under a bill of sale from Perenoud to them.   The
answer justified the taking under execution, and set up that
the bill of sale was made with intent to hinder, delay, and
defraud the creditors of said Perenoud, and therefore void as
to the Defendants, who were creditors of Perenoud at the time
of the execution of the bill of sale, and also averred that the
instrument conveyed all the property of every kind belonging
to said Perenoud, which was subject to execution, which alle-
gation was not denied by the reply.   The cause was referred to
E. A. Otis, Esq., who reported in favor of the Plaintiffs, upon
which judgment was entered for the sum of $744 40.   The
Defendants bring the cause to this court by writ of error.

The only question necessary to be considered in this case,
is as to the validity of the bill of sale from Perenoud to Bay-
ard & Co.   The facts in regard to that instrument are sub-
stantially as follows, viz : The instrument bears date the sec-
ond day of December, 1858, and for the consideration of
$2,810, purports to convey absolutely to Bayard & Co. all the
personal property, goods, wares and merchandize and groce-
ries, then in the store of Perenoud in St. Paul.   The condition
of the instrument then goes on to recite that Perenoud, at the
date of the instrument, was indebted to Bayard & Co. upon
sundry promissory notes, which were then past due, and that
the indenture was given to secure the payment of said notes,

and goes on to provide that the said Perenoud "may retain possession of said goods, chattels, and merchandize, and may sell and dispose of the same in the usual course of business, either at wholesale or retail, but is not to sell the same at prices less than a certain price contained in a certain bill or schedule furnished by said parties of the first part, to said party of the second part, and the said party of the first part, covenants and agrees to sell said goods, wares and merchandize, and account to said parties of the second part, at any and all times for the proceeds of such sale or sales, and said parties of the second part agree to apply such proceeds in payment of said above described notes."

It is further provided, that Perenoud shall not sell or encumber the goods, except by a regular sale at wholesale or retail for cash, shall account for such sales whenever called upon to do so by Bayard & Co., shall deliver up when called on to do so, all goods remaining unsold, and that Bayard & Co. shall have the right at any time to take absolute possession of all the goods, free and clear from any claim or equity of redemption on the part of Perenoud, unless he should sooner have paid the claim of Bayard & Co. in full. These are all the provisions which it is important to notice.

It will be observed that this instrument partakes of the nature both of a bill of sale and chattel mortgage. It purports to absolutely convey the property, and gives the right to the vendee to take possession at any time, and also speaks of the transfer as security for a pre-existing debt, leaving the vendor in the possession and management of the property. But by whatever name it be called, the intent and effect of the instrument, with reference to the interests of creditors, are the important points for consideration. It may be proper to state, that the referee found as matters of fact, that Perenoud out of the proceeds of the sale of the merchandize retained enough for the support of his family, using all the balance to purchase new supplies of goods, and replenish his stock, that he was insolvent at the time of the execution of the bill of sale, and that the sale was not made with intent to hinder, delay or defraud his creditors. These findings, however, are not important in the consideration of the transaction, as the validity of the sale

must depend upon the provisions of the instrument, and the allegations of the pleadings.

Taking this whole instrument together, we can arrive at no other conclusion than that it bears upon its face the intent to hinder and delay the creditors of Perenoud. It is admitted that Perenoud at the time of its execution was insolvent. It is manifest from the provisions of the instrument that the vendor did not in fact, and did not intend to part with his entire interest in the property. It may be even well doubted whether he intended to part with any interest, for he has reserved to himself just as complete control over the property as he had before the conveyance was made, stipulating to " account " for the *proceeds*. An agreement to account for the proceeds is not equivalent to an agreement to pay over the proceeds, for without a violation of his agreement, he may apply them in such manner as he sees fit, and as it appears in this case, did actually apply them to the support of his family and the purchase of other goods. Perenoud might have disposed of the entire stock of goods, and put the proceeds into his pocket, or invested them in other property, and not have rendered himself liable to Bayard & Co. for any misappropriation of the goods or proceeds. In other words, the property was not devoted to the payment of Perenoud's debt, and the entire stock of goods might have been disposed of, and the debt still have been left subsisting. It is true that Bayard & Co. stipulate, or rather, are required, (for they do not appear to have signed the instrument,) to apply the proceeds in payment of the notes of Perenoud, but this can only mean such proceeds as come into their hands ; at all events, it is not an agreement on the part of the vendor to pay over the money received on the sale of the goods.

Such being the provisions of the instrument with regard to the nature of the sale, the right of the vendor to retain possession of, and use the property, and control the proceeds, we find a further provision, giving the vendees the right of taking possession of the goods at any time upon demand. It will be observed that this forfeiture of the reserved interest of Perenoud, is not to occur at any fixed time, nor upon the happening of any certain event. It rests solely in the will of the

grantees. Nor does the provision have the effect to limit the interest of the vendor, for under the power granted to him, the whole stock might be disposed of, before the vendees exercised the right of taking possession of the property. Inasmuch, therefore, as it does not increase the security of the vendees, nor restricts the vendor in his control of the property, the only practical effect or value of this clause in the agreement, is to prevent creditors of the grantor from seizing upon the property, or interferring with the use of it by Perenoud. When creditors of the grantor attempt to subject this property to the payment of their claims, the vendees might step in, under this provision, and prevent the exercise of this right, under the claim, that this property was absolutely their own. And such we find to have been the actual result in this case. The instrument in question was executed on the 2d of December, 1858, and the taking by the Plaintiffs in Error is alleged to have occurred on the 30th of August, 1859, some nine months after the sale, during all which time, Perenoud continued in the possession and disposal of the property, nor was it until the 2d of July, 1859, and after the service of the summons in this action, that the bill of sale was filed in the Register's Office. And since it is admitted that Perenoud was insolvent, and the property described in this instrument was all which he possessed exempt from execution, it is manifest, that if creditors are prevented from rendering this property subject to the payment of their debts, they are hindered and delayed in their "lawful suits and demands." And such being the necessary effect of the conveyance if sustained, the law will presume that such was the intent of the grantor, which must avoid the sale under *Chapter* 51, *Comp. Stat. p.* 459. (*Greenleaf vs. Edes*, 2 *Minn.* 264; *Truitt, Brothers & Co. vs. Caldwell*, 3 *Minn.* 364; *Burt vs. McKinstry*, et al., decided July Term, 1860, ante page 204, and cases cited in the above.

The counsel for the Defendant in Error treats of or terms the instrument in question a mortgage, and contends that as the mortgagor had only a right of possession, and that not for any definite or fixed period, he had no interest subject to levy and sale under execution. Such is doubtless the rule, though I do not think the cases cited decide, that such an interest as

Perenoud held under this mortgage (if such it may be properly termed,) is not the subject of levy under execution. In *Mattison vs. Baucus*, 1 *Con.* 297, the court held, that where a mortgagee had actually taken possession of property, before condition broken, under a clause in a mortgage authorizing him so to do at any time he chose, the property was not subject to levy under execution against a mortgagor. In *Hull vs. Carnley*, 1 *Kernan*, 501, the doctrine held by the New York, and some other authorities, is affirmed, that the interest of the mortgagor, in possession of the property, for a definite period, is liable to be sold on execution. In that case a creditor of the mortgagor, sold on execution property mortgaged before breach of the condition, the mortgagor being in possession. But the reasoning in that case would go far towards sustaining the sale of the interest of Perenoud in the property mortgaged in the case at bar, by his creditors. The court say, that " the effect of the sale on execution against the mortgagor would be the same as a voluntary transfer of the mortgaged articles by the mortgagor to a third person. Such sales, whether judicial or private, pass such title as the vendor, or party against whom the authority to sell exists, had to part with, and no other." And the argument seems to be. that a sale by the Sheriff will give to the purchaser as good a title as he could obtain from the mortgagor. And in *Forbes vs. Parker*, 16 *Pick.* 462, where it was held that the creditor had not the right to sell the property mortgaged, the rule seems to be based on the ground that the mortgagor had not such right. But in the case under consideration it is expressly stipulated in the instrument of sale itself, that the mortgagor shall have such right, and it will not be questioned but that a purchaser of the goods from Perenoud would take a title clear from any claims which Bayard & Co. might interpose. And herein is the broad difference between this instrument and an ordinary chattel mortgage. The legitimate purpose and object of a chattel mortgage is to subject the property mortgaged to the payment of the liability of the mortgagor, to make it *security* for the accomplishment of that object. But permission to the mortgagor to dispose of the property at his will and pleasure, without a satisfaction of the debt, is incon-

sistent with the attainment of that object, and leads irresistibly to the conclusion, that the conveyance was made for some other purpose. But it is unnecessary to pursue these considerations, in their bearing upon the justification of the Sheriff, irrespective of the validity of the instrument, for the argument has been directed principally to the consideration of the effect of this conveyance, and the view entertained by the court upon this point disposes of the case.

There is some conflict of authorities as to the validity (so far as creditors are concerned) of instruments like the one under consideration, but we think the weight of authority, and that supported by the best reasoning, holds them void, as a matter of law, leaving no question of intent for the jury. The case of *Griswold vs. Sheldon*, 4 *Com*. 581, is closely analagous to the present, though it there appeared that the mortgagor was to keep up the stock of goods, &c., a circumstance which does not appear on the face of the instrument executed by Perenoud, although the referee finds that a part of the funds were actually used for such purpose. But the grounds on which the court seem to hold the mortgage in that case void, were that the mortgagor was permitted to go on and sell the goods as a merchant, and deal with them in all respects as absolute owner. And the court in that case say, that " if the intention to allow Burdick to dispose of the mortgaged property as owner cannot be gathered from the face of the deed, still the goods were left in his possession, and he was in fact allowed to deal with them as owner, and disposed of them as a merchant to his customers, from the date of the conveyance down to the time of the levy. Such a transaction the law always has, and I trust always will, pronounce a fraud upon creditors and purchasers." And in *Edgell vs. Hart*, 5 *Com*. 213, the decision in *Griswold vs. Sheldon* is approved, and it is held, that the existence of a provision, whether in or out of a mortgage, giving the mortgagor the right to sell, would invalidate it as a matter of law. The manifest tendency of such arrangements, (the court say) to defraud creditors by giving to the mortgagor a false credit, and their incongruity with the just and legal idea of a mortgage are, in my mind, sufficient to condemn them. It is also held in *Divver vs. McLaughlin*, 2

*Wen.* 596, that "if a mortgagee, by the circumstances of the case, would be precluded from pursuing the property mortgaged into the hands of a *bona fide* purchaser, he is equally debarred from setting up his claim against a judgment creditor, who has levied upon the property by virtue of an execution." It is manifest that the reasoning in all these cases is directly applicable to the case at bar, and we think sound law, and best calculated to promote the ends of justice, and should be adhered to in all cases presenting the same question. Authorities in some other States might be cited recognizing the same principle, but it is unnecessary to refer to them, as they do not materially add to the strength of the reasoning contained in the foregoing. It is only necessary to observe, that if such conveyances can be sustained, debtors will have discovered an easy escape from their liabilities, and creditors will be placed entirely at their mercy. The conclusion being, that the conveyance from Perenoud to Bayard & Co., was void as to creditors, the judgment below must be reversed.