## HIRAM T. HORTON *vs.* ALLAN K. WILLIAMS.

### Jan. 7, 1875.

**Incompetent Evidence of Fact which Jury ought to Presume.**—The admission of incompetent evidence to prove a fact which, in the absence of any evidence, the jury are bound to presume, is not error for which a judgment should be reversed.

**Chattel Mortgage fraudulent as against Creditors.**—A mortgage of chattels coupled with an agreement that the mortgagor may retain possession of the mortgaged property, and sell or dispose of it as his own, without satisfaction of the mortgage debt, is fraudulent and void as against the mortgagor's creditors and subsequent purchasers and mortgagees. If the intent that the mortgagor may retain possession of the property, and dispose of it as owner, is apparent in the mortgage itself, the existence of such intent is to be determined by the court; otherwise, the existence of the intent is a question for the jury. But in every case, if the intent is found to exist, the law declares the mortgage fraudulent. A mortgage which is fraudulent as to any of the property covered by it, is fraudulent altogether.

**Same—Intent to Defraud must exist when Mortgage is made.**—To render a mortgage fraudulent, the intent to defraud must exist when the mortgage is made. The mortgagor's subsequent conduct in dealing with the property, while it may furnish strong evidence of fraud in the making of the mortgage, will not of itself render the mortgage void.

**Same—Filing not Equivalent to Actual Delivery of Property.**—The statute requiring the filing of chattel mortgages, when the mortgagor retains possession of the mortgaged, property, does not make the filing of the mortgage legally equivalent to actual delivery and continued change of possession.

**Same—Bona Fide Purchaser.**—One who takes from the mortgagor a bill of sale of mortgaged chattels, in payment of a precedent debt and without notice of the mortgage, is a purchaser in good faith, with all the rights of such purchaser.

**Erroneous Qualification of Instruction.**—It is improper for a judge, having given an instruction asked in the very terms of the request, to weaken its force by language of his own, the effect of which must be to leave the jury in doubt as to whether the instruction was given or refused.

Replevin for a pair of horses and a double harness. Plaintiff claimed title from one Sleator, by a chattel mortgage of this and other property, made November 15, 1869, and filed November 18, in the town of Rock Dell, where Sleator resided, and also by a bill of sale made September 11, 1871. Defendant claimed title from Sleator by a chattel mortgage

of the horses only, made November 18, 1870.   Sleator's
farm, where he kept the horses in his possession until they
were taken from him by defendant, September 30, 1871,
was partly in Rock Dell, and partly in the town of High
Forest.   In his mortgage to defendant, he is described as of
High Forest, and defendant filed his mortgage in that town
on November 23, 1870, and did not file it in Rock Dell
until September 14, 1871, three days after the sale to
plaintiff.

At the trial in the district court for Olmsted county, be-
fore Van Dyke, J., it appeared that plaintiff's mortgage
covered, besides the horses and harness, thirty calves, thirty
tons of hay, three milch cows, seven hundred bushels of
wheat, four hundred bushels of oats, two yearling heifers, a
pair of steers, a yoke of oxen, a lumber wagon and a sulky
rake.   The plaintiff testified that his mortgage was given to se-
cure an indebtedness to the amount named therein, and that
he had no other object in taking it but to secure such debt.
On cross-examination, he testified:   " The lumber wagon, I
can't tell what became of it; I can't say that any of the
pay for it went to me.   I expect I got a part of the calves,
mentioned in the mortgage, in the bill of sale; I can't tell
how many.   The hay included in the mortgage was fed out
to the cattle.   I left it with Sleator.   I left all the property
included in the mortgage with Sleator.   *   *   The seven
hundred bushels of wheat, Sleator had, and used it up for seed
and food, or carried it off and sold it; I never got any of it,
or any of the pay for it.   The four hundred bushels of oats
went in the same way; I never got any of the oats or any
pay for them.   I can't tell what became of the yearling
heifers; they might have been killed for beef, or strayed off
and been lost.   I can't tell what became of the two-year-
old steers.   I think the hay, wheat and oats were fed out
and used up with my knowledge.   I was there and saw it
done."   On re-direct examination, he testified:   " The hay,
oats and wheat were all used up before date of defendant's
mortgage.   I gave my consent that Sleator should sell the

wheat. The oats also were fed out prior to November, 1870, and no part of them applied on my mortgage. I never got a bushel of the grain.''

It appeared that defendant's mortgage was given to secure a valid debt, and no evidence was introduced to impeach the good faith of it. There was conflicting testimony as to whether, prior to the making of defendant's mortgage, the plaintiff told him that his own mortgage did not cover the horses, and as to whether the plaintiff, when he took his bill of sale, had actual notice of defendant's mortgage.

The first instruction asked by defendant was : `` From the facts of the case, as they are shown by uncontroverted evidence, the jury must find that the plaintiff's mortgage was made for the purpose of defrauding creditors of the mortgagor, and therefore void as to such creditors, and void as to purchasers and mortgagees in good faith.'' The instruction was refused, and defendant excepted.

The second instruction requested was : `` If the jury find from the evidence that the defendant, at the time of the commencement of this action, and at the time of the purchase of the horses by plaintiff from Sleator, and prior thereto, had a valid and subsisting mortgage upon said horses ; that the same was executed in good faith, and not for the purpose of defrauding any creditor ; that the same was unpaid ; and that the plaintiff's mortgage was not executed in good faith, or was executed for the purpose of defrauding any creditor ; and that at the time of the purchase of the horses by plaintiff, he, the plaintiff, had notice and knowledge of the existence of the defendant's mortgage ; then the defendant is entitled to a verdict in his favor for the horses.'' The court gave this instruction, adding : ``Yes, if the defendant's papers are all right, and the plaintiff all wrong, then this is so, and I so charge the jury ;'' to which the defendant only excepted.

The jury found a verdict for the plaintiff, upon which judgment was entered, and the defendant appealed.

*Lloyd Barber*, for appellant.

*Charles M. Start*, for respondent.

YOUNG. J. The plaintiff's testimony as to the situation of the horses when his mortgage was made, was incompetent, being mere hearsay; but it was proved that Sleator, the mortgagor, resided on a farm at Rock Dell, in which town the plaintiff's mortgage was filed. No attempt was made to prove that the horses were not at Rock Dell when the mortgage was executed, and in the absence of any evidence as to the precise situation of the horses, it is to be presumed that, being chattels personal, they were, as the mortgage says they were, at the place of the owner's residence. Had the plaintiff's testimony not been received, or had the motion to strike it out been granted, the presumption from the proof of Sleator's residence, and from the recital in the mortgage, would have been abundantly sufficient to warrant, and indeed to require, a finding that the property was, at the date of the execution of the mortgage, situated in the town where the mortgage was filed. As the objectionable evidence only went to establish a fact which, in the absence of any evidence on the subject, the jury were bound to presume, the denial of the motion to strike it out could have worked no possible injury to the defendant, and is no ground for a reversal of the judgment.

The first instruction asked by the defendant was properly refused. A mortgage of chattels, coupled with an agreement that the mortgagor may retain possession of the mortgaged property, and sell or dispose of it as his own, without satisfaction of the mortgage debt, is of no effect as a security, and can only operate to hinder, delay and defraud the creditors of the mortgagor and subsequent purchasers and mortgagees. In the early case of *Chophard* v. *Bayard*, 4 Minn. 533, it was held by this court, in accordance with sound principle and the weight of authority, that such a mortgage was necessarily fraudulent as against the mortgagor's creditors. And see *Edgell* v. *Hart*, 9 N. Y. 213; *Place* v. *Langworthy*, 13 Wis. 629; *Stewart* v. *Deuster*, 23 Wis. 136; *Collins* v. *Myers*, 16 Ohio, 547; *Freeman* v. *Rawson*, 5 Ohio St. 1: *Bank of Leavenworth* v. *Hunt*, 11

Wall. 391. If the intent that the mortgagor may retain possession of the goods, and dispose of them as owner, is apparent in the mortgage itself, the existence of such intent is to be determined by the court; otherwise the existence of the intent is a question for the jury upon the evidence; but in every case, if the intent is found to exist, the law declares the mortgage to be fraudulent, *Gere* v. *Murray*, 6 Minn. 305; *Gardner* v. *McEwen*, 19 N. Y. 123; *Russell* v. *Winne*, 37 N. Y. 591, and cases *supra*.

The law as held in *Chophard* v. *Bayard* and *Gere* v. *Murray* has not been changed by the act requiring chattel mortgages to be filed, unless accompanied by immediate delivery, and followed by an actual and continued change of possession of the things mortgaged. Laws 1860, ch. 23; Gen. Stat. ch. 39, § 1. Unlike the statutes of Massachusetts and Iowa on this subject, our statute does not make the filing of the mortgage legally equivalent to actual delivery and continued change of possession; but like the statute of New York, of which it is a copy, "it merely adds another to the grounds on which a mortgage of personal chattels shall be void." *Wood* v. *Lowry*, 17 Wend. 492; *Smith* v. *Acker*, 23 Wend. 653; *Bullock* v. *Williams*, 16 Pick. 33; *Forbes* v. *Parker*, 16 Pick. 462; *Hughes* v. *Cory*, 20 Iowa, 399.

The plaintiff's mortgage by implication authorized the mortgagor to retain possession of the mortgaged property until default, or until he should deem himself insecure; (*Hall* v. *Sampson*, 35 N. Y. 274;) but it discloses no agreement or intent of the parties that the mortgagor should be allowed to sell or otherwise dispose of any of the property. It was, however, proved that between the execution of the mortgage to the plaintiff, and the execution of that to the defendant, the mortgagor sold and consumed, with the plaintiff's knowledge and permission, a large amount of wheat, oats and hay, and a considerable number of cattle, all of which property was included in the mortgage to the plaintiff, but not in that to defendant, which covered only the

horses now in dispute. If on this account the mortgage was void as to any of the property covered by it, it was void altogether. *Russell* v. *Winne*, 37 N. Y. 591, 596. But these subsequent sales are not of themselves sufficient to make the mortgage fraudulent. The character of the instrument depends on the intent with which it was made. If the mortgage was made without fraudulent intent, and the mortgagee subsequently consented to a sale of all or a part of the mortgaged property, such a sale would discharge the lien of the mortgage on the articles sold, but would not operate retrospectively so as to avoid the mortgage itself. *Russell* v. *Winne*, 37 N. Y. 591; *Klapp's Assignees* v. *Shirk*, 13 Penn. St. 589.

The conduct of the parties in dealing with the mortgaged property may, however, furnish evidence, in some cases amounting to a moral certainty, that the mortgage was executed with a fraudulent intent. Thus, in the case of a mortgage on the stock of goods in a retail shop, where the mortgagor continues in possession, making sales from day to day as owner, and dealing with the goods and the proceeds as his own, with the mortgagee's knowledge and assent, it is extremely difficult to resist the conclusion that this course of conduct on the part of the mortgagor was contemplated and intended by the parties when the mortgage was made. See *Griswold* v. *Sheldon*, 4 N. Y. 581; *Freeman* v. *Rawson*, 5 Ohio St. 1; *Russell* v. *Winne*, 37 N. Y. 591. But upon the evidence in this case, it was proper that the question of the intent with which the mortgage was made, should be left to the jury.

The second instruction asked by the defendant was entirely correct, and should have been given, if not in the very language of the request, (*Dodge* v. *Rogers*, 9 Minn. 223,) yet in substantial compliance with it. It was improper for the judge, after giving the instruction in the very terms asked by the defendant, to impair, and may be destroy its effect, by a sarcasm or a sneer, which must have left the jury in doubt whether the instruction was given or refused. Va-

rious other errors are alleged in the charge as given. Perhaps no one of the instructions excepted to, would, of itself, be ground for reversing the judgment; but taking them together, and in connection with the disposition made of the defendant's second request, we cannot resist the conclusion that the case was not given to the jury with that fairness and impartiality which the defendant had a right to require, and by the absence of which he could not have failed to be injured. He has good reason to complain that he has not had a fair trial of his case; and to the end that he may have that fair trial of which he has been unjustly deprived by the action of the court below, the judgment must be reversed.

It is only necessary to add, for the purpose of a second trial, that one who takes from the mortgagor a bill of sale of mortgaged chattels in payment of a precedent debt, and without notice of the mortgage, is a purchaser in good faith, with all the rights of such purchaser. *Stevenson* v. *Heyland,* 11 Minn. 198; *Shufeldt* v. *Pease,* 16 Wis. 659.

Judgment reversed.