## GREELEY v. WINSOR, ET AL.

1. A written lease contained the following provision: "That said rents, whether due or to become due, shall be a perpetual lien on any and all goods, merchandise, furniture and fixtures now contained, or which may at any time during the continuance of this lease be contained, in the building except such goods as are sold in the usual course of retail

trade:" The lease was executed and filed as required by the law concerning chattel mortgages. *Held*, that such provision constituted, and must be treated as, a chattel mortgage.

2. The clause "except such goods as are sold in the usual course of retail trade," was an implied permission to the mortgagor to make such sales; and, there being nothing in the lease indicating any appropriation or intent to appropriate the proceeds of sales to any other purpose, it was permission to the mortgagor to sell such goods, being a part of the mortgaged property, for his own benefit, and is at least presumptively fraudulent as to creditors of the mortgagor; CORSON, P. J., expressing the opinion that it should be held conclusively so.

3. Such mortgage, being presumptively fraudulent as to a portion of the property, therein described, is presumptively invalid as to all. So *held*, where a portion of the property, "furniture and fixtures," was not included in the power of sale.

(Syllabus by the court. Argued Feb. 12, 1890. Opinion filed May 12, 1890.)

Appeal from district court, Minnehaha county.

Action upon undertaking against loss or decrease in rents. A demurrer was interposed which was overruled. From order overruling demurrer defendant appeals. Reversed.

The facts are stated in the opinion.

*Winsor & Kittredge* for appellants.

A provision in a lease of premises that "rents whether due or to become due thereunder shall be a perpetual lien upon the stock of goods contained or to be contained in the building" is absolutely void as to other mortgage creditors. Reynolds v. Ellis, 103 N. Y. 115; § 4657 Comp. Laws. The instrument is not a transfer for it does not convey the title. § 3222 Comp. Laws. It is not a mortgage, for it hypothecates nothing. § 4348 Comp. Laws. Dalton v. Lanpahn, 27 Mich. 529. In the common law states and in many of the code states the old remedy of the landlord by distress is allowed, but this rule never went beyond the fact that he only acquired a lien when he obtained possession by virtue of his search warrant. A landlord has no statutory or other lien for rent reserved in a lease in this state. Hitchcock v. Hassett, 71 Cal. 331; 3 Cohn, 60; 70 Ill. 677; Morgan v. Campbell, 2 Wall 381.

*Wynn & Nock* for respondent.

A complaint containing the elementary constituents of a

cause of action and averring facts entitling the plaintiff to any relief, though not to the relief prayed for, is sufficient upon demurrer for insufficient facts. 1 Boone Code Pleading, §§ 53-55; Lorillard v. Clyde, 86 N. Y. 384; White v. Lyons, 42 Cal. 282; Fleming v. Albrech, 67 Cal. 226.

The instrument in question contains all the elements of a chattel mortgage, and is a chattel mortgage so far as the lien clause therein contained is concerned. Comp. Laws, §§ 4321, 4330, 4325, 4346, 4348. Everett v. Buchanan, 2 Dak. 261; Boone on Mortgages, § 31; Jones on Chattel Mortgages, §§ 34-13; Johnson v. Crowfoot, 37 How. Pr. 59; Fejavary v. Broseach, 35 Am. Rep. 261; McCaffrey v. Wooden, 65 N. Y. 59.

KELLAM, J. On the 3d day of October, 1883, respondent, who was then the owner of a store-building in the city of Sioux Falls, leased the same, by a written contract, to Waxman & Co., for the term of five years, which lease was duly filed for record October 12, 1883, in the office of register of deeds of the proper county, and "was duly entered upon the chattel mortgage calendar of said office." The lease contained the following provision: "That said rents, whether due or to become due, shall be a perpetual lien on any and all goods and merchandise, furniture and fixtures now contained, or which may at any time during the continuance of this lease be contained, in the building, except such goods as are sold in the usual course of retail trade." Afterwards the lessees, Waxman & Co., gave several chattel mortgages, to secure different creditors, upon the stock of merchandise, furniture, and fixtures contained in the said leased store-building, being the same personal property described and referred to in the provision of said lease above quoted. Afterwards the appellants Winsor & Swezey, as the attorneys and agents of the several mortgagees, undertook to foreclose said chattel mortgages, and to that end took possession of said mortgaged property, and advertised the same. Greeley, the lessor, and respondent herein, then commenced an action against said Winsor & Swezey to restrain such foreclosure sale. At this time, by an arrangement between the parties, the respondent dismissed the said action and released his claim

upon said goods, furniture, and fixtures, in consideration of a bond from said appellants to secure him against loss of rent on said lease to an amount therein named; the condition of the bond being, "that if the said Charles A. Greeley shall and does sustain any damages from the loss or decrease of rents during said four years, and had at the time of the commencement of his said action a valid and subsisting lien, legal or equitable, upon or against said property, or any part thereof as security for said rents according to the terms of said lease, and the undersigned shall pay or cause to be paid," etc., "then this obligation," etc. Upon this obligation, respondent Greeley brought this action against appellants, obligors therein named. To the complaint, setting out the history of the bond and a copy of the lease, appellants demurred for insufficiency. The demurrer was overruled, and from such decision this appeal is taken.

The controversy is over the force and effect of the provision in the lease for a lien for rent. If, as against the mortgage creditors represented by appellants, respondent had "a valid and subsisting lien" upon the property taken by them under their mortgages, then the condition of the bond is met under which appellants' liability as obligors should attach, and the complaint would state a cause of action against them. If such a provision is effectual at all as against creditors, it is plain it must be as a chattel mortgage. The rents were to be a "perpetual lien." The possession of the property did not change, and no lien except that of a chattel mortgage is tolerated by our statute, unless accompanied by possession in the lienor. It seems to have all the requisites of a chattel mortgage, both as to its construction and its execution, and the statutory requirements as to filing as a chattel mortgage were fully complied with.

The pivotal question, then, is, what was the legal value of respondent's chattel mortgage upon his lessee's stock of goods, furniture, and fixtures, "except such goods as are sold in the usual course of retail trade?" for the answer to this question must determine whether or not respondent held a "valid and subsisting lien" upon such property, or any part of it. While

there is here no express and affirmative reservation in the lessee and mortgagor of a power to sell any of the mortgaged property, such power is so specifically recognized and provided for as to be tantamount to express authority; and the immediate question before us is, what effect has such a reservation of an unqualified power of sale upon an otherwise valid mortgage? In the absence of any provision indicating directly or indirectly any intenton of the parties, or either of them, that the proceeds of sales, or any part thereof, should be used, applied, or appropriated in any other manner, or to any other purpose, than as the interest and pleasure of the mortgagor might dictate, the instrument at once attaches itself to that class of chattel mortgages in which is reserved to the mortgagor a power of sale for his own benefit, and is subject to the law governing such mortgages. Chattel mortgages are authorized by our statutes, and are recognized by and in all departments of business as a legitimate means of security, useful alike to debtor and creditor. They have become and are an important factor in the transaction of business in the state, and the courts should adopt and be governed by such principles and rules in the construction and effect given to these instruments, in the different forms, and with the various qualifying provisions, with which they are presented, as will be most likely to conserve the rights and interests of all parties interested in the mortgaged property, whether mortgagor, mortgagee, or general creditor. In this case the mortgagor was permitted by the terms of the mortgage to make sales from the mortgaged property, in the usual course of retail trade, for his own use and benefit. The right to appropriate the proceeds of sales was unlimited. It was not even qualified by any undertaking, express or implied, that such proceeds, or any part of the same, should be reinvested in goods, that the security might thus be kept intact. It was a plenary license to possess, manage. and sell the mortgaged property, subject only to the condition that the sales should be made in the usual course of retail trade, allowing the entire proceeds to be diverted to purposes hostile to the interests of the unpreferred creditors, if the mortgagor should be so disposed. The

mortgagee had agreed in advance that the mortgagor might dispose of the property which apparently constituted his security,—retain, spend, or give away the proceeds, as he saw fit; and thus his entire stock might be dissipated and melt away without diminishing the aggregate of indebtedness a dollar, and this might all occur in exact pursuance of the terms of this mortgage. Every debtor is, in a sense, trustee of his property for the benefit of his creditors; and every creditor has a right to have the trust so administered as not to unfairly prejudice his interests, or jeopardize his chances for the collection of his debt. Without further argument, it is sufficient to say that such mortgages are held to be at least presumptively fraudulent in most of the states of the Union, and in many of them conclusively so. It is needless to fortify this proposition with authorities. Whether in this state the presumption is a rebuttable one, it is not now necessary to consider or determine.

The question is before us on demurrer to the complaint. The complaint presents this mortgage as showing respondent's right to the property which the bond of appellants represents. If the mortgage on its face is presumpt'vely fraudulent, then the complaint would state no cause of action, because, if presumptively fraudulent it is presumptively void; and no facts are stated in the complaint tending to negative or rebut such presumption. The bond was only to be operative in case the respondent had a valid and subsisting lien upon the property, and the complaint offers the mortgage clause of the lease as showing such lien.

A more troublesome question occurs when we come to consider the effect of the power of sale upon the property in the mortgage not covered by nor included in such power of sale. The mortgage was upon "goods, merchandise, furniture, and fixtures." The permission to sell covered only "such goods as are sold in the usual course of retail trade." Is the mortgage *prima facie* fraudulent *in toto*, or is it good as to the furniture and fixtures; they evidently not being included in the permission to sell? The law condemns such a mortgage as this, not because its terms prove any fraudulent or corrupt motive on

the part of those who made or those who took it, but because such a mortgage furnishes such easy facilities for fraud, and is so well adapted to accomplish unfair and fraudulent results, as to put it under the ban of suspicion.    It is condemned not because the transaction was inspired by a bad intent, but because it naturally leads to bad results.    If it were the actual, proved intent of the parties which fixed the character of this instrument as fraudulent, it would hardly be contended that because they intended to and did reserve the furniture and fixtures from the operation of this vicious power of sale the mortgage ought to be held good as to them; but upon the familiar principle that every man must be presumed to have intended the natural and legitimate results of his acts the law substitutes the effect for the intent, and, as it has found that the effect of such provisions is ordinarily bad, it assumes that the intent is ordinarily, or, in other words, presumptively bad.

There are other reasons for applying this rule to the entire mortgage provision in this case.    The mortgagee, while claiming to have security upon all this property, has stipulated and consented that the mortgagor might gradually, by retail sales, deplete and consume the bulk of his security, leaving the burden of the debt not upon the entire property which he pretends to hold under, and which he protects by his mortgage, but upon the furniture and fixtures, which alone, of all the mortgaged property, is to remain under the lien of his mortgage, and must constitute his real security.    It is very evident that all the real security respondent could have under his mortgage was the property that the mortgagor had no right to sell.    Power to sell the goods was power to annul and destroy the lien of the mortgage upon them; and this respondent had agreed might be done, and that without any diminution of the debt as the result of such sales.    If respondent were content with security upon the furniture and fixtures only—and such conclusion the facts clearly argue,—he ought not to be allowed to incumber by the same instrument a large amount of other property from which he expected no benefit or advantage.    To the creditors of the mortgagor, respondent said by this mortgage: "I hold a mortgage

upon this entire stock, and furniture and fixtures, to secure five years rent at $1,300 per year; and, if you desire to proceed against any of this property for the collection of your claims, you must pay off my mortgage as provided in the statute." But to the mortgagor he said: "You may pay no attention to my mortgage, so far as the goods are concerned. You may sell them as though I had no mortgage, but the furniture and fix- tures must remain and be bound by my mortgage, and, as be- tween us, I will depend upon them for my security." Such a mortgage would allow a mortgagee, if so disposed, without risk or danger to his own security, unless an actual fraudulent in- tent could be proved, to shelter under his mortgage property which he never expected to subject to his apparent lien, and in the interest of the mortgagor exhibit his mortgage on the record, and, thus with entire safety to his own security, experi- ment with the chances of driving away approaching creditors. We think creditors have a right to complain of a chattel mort- gage susceptible of such uses, and that it is at least *prima facie* void as to all the property covered by it. The rulings of the courts have not been uniform upon this question, but this view is fully sustained in the following cases; Russell v. Winne, 37 N. Y 591; Horton v. Williams, 21 Minn. 187; Wilson v. Voight, (Colo.) 13 Pac. Rep. 726; Harmon v. Hoskins, 56 Miss. 142.

It follows that the demurrer should have been sustained. The judgment of the court below overruling the demurrer is reversed. All the judges concurring.

CORSON, P. J. I am of the opinion that the court should go further, and hold that the mortgage or agreement in this case is not only at least presumptively fraudulent, but abso- lutely fraudulent, as to the creditors of the mortgagor. A chattel mortgage in which the mortgagor is permitted, by the terms of the mortgage, to sell all or any part of the property embraced in the mortgage and apply the proceeds to his own use and benefit, is, in my opinion, fraudulent in law, without regard to the intent of the parties. It is evident that, as to the property so permitted to be sold for the benefit of the mort- gagor, the mortgagee has no real interest in, or lien upon it,

and that the effect of such a mortgage will necessarily be to aid the mortgagor in withholding his property so covered by the mortgage from his creditors. The agreement is necessarily fraudulent, because it operates, of necessity, to hinder, delay, and defraud the creditors, by securing to the debtor, the use and benefit of his property and its proceeds, while it protects it from levy and sale for the payment of his debts. Honesty and good faith are necessary to render a chattel mortgage valid· and whenever it appears that one object was, or the effect is, to hinder and delay the creditors to any extent, the entire instrument is, in judgment of law, fraudulent and void.

REPORTER: A rehearing was granted in this case, and in the opinion filed upon rehearing the court affirmed the foregoing opinion.