## HAROLD E. PIERCE v. W. A. WAGNER.[1]

### April 27, 1896.

### Nos. 9886—(201).

**Chattel Mortgage—Retention of Possession—Fraud on Creditors.**

A mortgage on a stock of liquors and saloon supplies *held* void as to creditors, on the ground that, under the agreement between the parties, the mortgagor was to retain possession, with the power to use the proceeds of the property in maintaining the business and in his own support and for his own benefit, without satisfying the mortgage debt.

Action in the municipal court of Duluth against W. A. Wagner, defendant, and National Bank of Commerce, garnishee. Pabst Brewing Company intervened as claimant. The court, Edson, J., found in favor of plaintiff and against the claimant. From an order denying a motion for a new trial, the claimant appealed. Affirmed.

*Austin N. McGindley,* for appellant.

*Wilson & Wray,* for respondent.

MITCHELL, J. The defendant, being engaged in the saloon business, and having borrowed of the claimant $1,000, with which to pay his license, executed to it a chattel mortgage on his stock of liquors and saloon supplies, of the value of $1,500, to secure the loan and interest, payable in twelve monthly instalments, accord-

1 Reported in 66 N. W. 977; 67 N. W. 537.

ing to the conditions of twelve promissory notes. Seventy-three dollars of the receipts from the sales of the liquors and supplies in the saloon having been deposited with the garnishee by defendant to his own credit as "agent," the plaintiff garnished it as defendant's property. Thereupon the claimant intervened, and claimed the money under its mortgage. The plaintiff contends that the mortgage was fraudulent and void as to the creditors of the defendant. The trial court found that this contention was true; and whether this finding was justified by the evidence is the only question presented by this appeal.

The only provisions of the mortgage that are material were substantially as follows: The mortgagor covenanted that, until the full payment of all the notes secured by the mortgage, he would, by purchases from time to time, keep the stock of at least the average value of $1,500. To that end, it was provided that the proceeds of sales in the saloon should be used by the mortgagor in the purchase of new stock as far as necessary to keep the stock of the value of $1,500; also, that the mortgage should be a 'lien upon the new stock, as well as that then on hand. The residue of the proceeds of sales by the mortgagor was to be used by him in defraying and paying all necessary expenses in carrying on and' conducting the saloon, and the balance to be used alone in payment of the notes secured by the mortgage, and not to be diverted to any other purpose. The mortgagor covenanted to pay over to the mortgagee such surplus of the proceeds of sales. The mortgagee appointed the mortgagor its agent to sell the liquors and supplies at retail, to purchase supplies for the saloon from time to time, to pay off the necessary expenses connected with the carrying on the saloon, and to pay over the surplus of the proceeds of sales, from time to time, to be credited on the notes.

The oral evidence in the case clearly shows that the mortgagor conducted and carried on the business precisely as if absolute proprietor, selling the liquors at retail, using the proceeds in paying his rent, hired assistants, lights, and other incidental expenses, and buying new stock, and, in addition thereto, $45 or $50 a month for his own support. The mortgagee exercised no control or supervision over the business, except, to use the expression of its agent, to keep sufficient "tab" of it to see that the mortgagor kept

up the stock, and paid his notes as they fell due and his monthly bills for beer which it was furnishing him for his trade. It is perfectly manifest from the evidence that, so long as he continued to do these things, it did not attempt or expect to interfere with or control the business, but that the mortgagor was at liberty to run it as his own, and in his own way. What stock he should buy, the prices he should sell at, what rent he should pay, what help he should employ, what other expenses he should incur, how much he might use for his own support, were matters left wholly to the mortgagor's discretion, and over which the mortgagee neither cared nor expected to exercise any control, so long as the mortgagor kept up his stock and paid his notes and beer bills. The evidence also amply justifies the conclusion that this mode of dealing with the property and conducting the business was in exact accord with the intention and expectation of the parties at the time the mortgage was executed.

That such an agreement reserves benefits to the mortgagor, and prejudices other creditors, seems to us too plain for argument. It ties up the property, so as to prevent its being reached by other creditors, and enables the mortgagor to go on with his business, and draw from it the means of conducting it, and of his own support, while the mortgage still remains unpaid. It opens the door for fraud, and permits the mortgagor to use the property for his own benefit, utilizing the mortgage as a shield against other creditors. Calling the mortgagor the mortgagee's agent does not help the matter.

Where the mortgagor of a stock of merchandise is allowed to remain in possession, and sell the property at retail, in the ordinary course of business, the only rule that is just as to other creditors is that, in order to render the mortgage valid, the debtor must part with all right to appropriate the property or its proceeds to his own use during the existence of the lien of the mortgage. From the early case of Chophard v. Bayard, 4 Minn. 418 (533), down to date, this court has rigidly adhered to the doctrine that a mortgage is void as to creditors which provides for the retention of mortgaged personalty by the mortgagor, accompanied with the power to dispose of it for his own benefit without satisfaction of the mortgage debt. The agreement between the parties in this

case clearly comes within that rule. How such a scheme would or might be made to operate is very apparent. The mortgagor could, as was the fact in this case, continue and conduct his business precisely as if there was no mortgage in existence, support himself out of it, and so regulate the expenses of the business that there would be no surplus. It would thus take a year to pay off the mortgage, and at the end of that time, by borrowing another $1,000 to pay his license for the next year, and executing a new mortgage, he could continue his business indefinitely, in the meanwhile supporting himself out of it, while his property would be shielded by the mortgages from other creditors.

Order affirmed.

---

## Upon Petition for Reargument.

### May 29, 1896.

PER CURIAM. Upon an application for a reargument the claimant or intervenor complains because we did not consider his ninth assignment, to-wit: that "the court erred in failing to find from the testimony in said action that the judgment of plaintiff against defendant, W. A. Wagner, upon which the garnishee herein was based, was satisfied by virtue of a levy made upon an execution issued upon said judgment subsequent to the service of said garnishee process upon garnishee."

It would be a sufficient answer to say that the trial court was never asked to make any such finding. But waiving this, and also the question whether the allegations of plaintiff's answer to the claimant's intervention complaint did not stand admitted for want of a reply (see Smith v. Barclay, 54 Minn. 47), there is no merit in the point. Giving the claimant the benefit of the very most that the evidence possibly tended to show, it was simply to the effect that, after plaintiff had garnished money enough to pay part of his judgment, he subsequently levied on other property which would have sold for more than enough to pay the whole judgment. This did not operate as a release of the money garnished. It may have amounted to an excessive levy; but that is a question between the plaintiff or the officer making it and the defendant. The First National Bank of Hastings v. Rogers, 13 Minn. 376

(407), relied on by counsel is not in point. Counsel also seems to think that we held that all chattel mortgages which provide for the mortgagor remaining in possession, selling the property and accounting to the mortgagee for the proceeds are per se void; also that, although a mortgage was valid when made it would become invalid as to creditors by reason of any subsequent "laxity of administration" or departure from "a strict compliance" with its terms. An examination of the opinion will show that we did not hold anything of the kind. Neither did we hold that the particular mortgage in question was void on its face. We had no occasion to consider that question.

Application denied.