PABST BREWING COMPANY v. W. W. BUTCHART, Sheriff.[1]

January 15, 1897.

Nos. 10,205—(210).

**Fraudulent Conveyance—Chattel Mortgage.**

A chattel mortgage on a retail stock of goods provided that the mortgagor should sell the goods in the regular course of business, and apply the proceeds in keeping up the stock and defraying the expenses of running the business, and that all of the balance of the proceeds should be paid to the mortgagee, to be applied on the mortgage indebtedness. *Held,* the mortgage was, on its face, fraudulent and void as to the creditors of the mortgagor.

Appeal by plaintiff from an order of the district court for St. Louis county, Moer, J., denying a motion for a new trial. Affirmed.
*McGindley & Whitely,* for appellant.
*Wilson & Wray,* for respondent.

CANTY, J.   Under an execution issued on a judgment against one Wagner, the defendant, as sheriff of St. Louis county, levied on certain liquors the property of Wagner. Plaintiff brought replevin, claiming the property under a chattel mortgage made and delivered to it by Wagner, and filed of record prior to such levy. On the

---

[1] Reported in 69 N. W. 809.

trial, the court held plaintiff's chattel mortgage void on its face as to the creditors of Wagner, and dismissed the action. Plaintiff appeals from an order denying its motion for a new trial.

The only question raised on this appeal is whether, as to the creditors of Wagner, the chattel mortgage is void on its face; and we are of the opinion that it is. It is the same chattel mortgage considered in the case of Pierce v. Wagner, 64 Minn. 265, 66 N. W. 977, 67 N. W. 537. But in that case the question here presented was not decided, as there was oral evidence tending to prove, as the court below decided, that the mortgage was, as to creditors, void in fact, and the decision was affirmed. The mortgage recites that it covers a stock of liquors and cigars, "being used and sold by the party of the first part at retail in the carrying on and conducting of a saloon." It further recites that the stock which it so covers is of the value of $1,500, and it provides that said stock shall, until the mortgage debt is paid, be kept up to that value by purchases from time to time by the mortgagor; that the proceeds of sales in the business shall be used to keep up the stock; that the mortgage shall also be a lien on the new stock so purchased; that the remainder of the proceeds of said sales shall be used in defraying all necessary expenses of carrying on and conducting said saloon;

"And the balance of said proceeds, after the said purchase of new goods to supply the place of the goods sold in carrying on and conducting of said business, so as to keep said stock of the value of $1,500 as aforesaid, and the expense of carrying on and conducting of said business as aforesaid, shall be used alone for the payment of the indebtedness hereby secured."

The mortgagor covenants to pay over to the mortgagee

"All said surplus proceeds of the sales of said stock, and to that end the said party of the first part is hereby created an agent of the said party of the second part to so sell said liquors, cigars, etc., at retail, as aforesaid; to purchase supplies for said saloon from time to time under the regulations and restrictions herein imposed; to pay off and discharge all the necessary expenses incident to and connected with the carrying on and conducting of said saloon; and to pay over and have credited upon said notes said surplus proceeds of said saloon business from time to time as aforesaid."

It is further provided that the mortgagor shall keep a correct account of his daily sales, "and account for his actions and doings

once a month, until the full payment of the indebtedness hereinbefore mentioned."

On the face of this mortgage, its chief purpose would seem to be to preserve the stock and good will of the business, shielded from the creditors of the mortgagor. At least, that is the primary purpose. It is a first mortgage for this purpose, and a second mortgage for the payment of appellant's claim. The whole stock may eventually be consumed in defraying the expenses of the business which it is stipulated shall be kept up and continued, and not a dollar may ever be left to apply on the mortgagee's claim.

It is a very common thing for a merchant to find himself running a losing business, especially in dull times, or times of financial stringency. If such a chattel mortgage should be upheld, it would permit every merchant who found himself in such a condition to hold his assets for the purpose of continuing and keeping up his business, and, as he would hope, tiding him over the dull times. He could accomplish this by giving such a chattel mortgage to one of his creditors, which would serve as a shield against all of his creditors. The mortgage, on its face, permits the mortgagor to dispose of the mortgaged property for his own use and benefit. The fact that it limits such use, and prescribes the particular benefit to himself to which he shall apply the proceeds of the property, does not make the mortgage any the less fraudulent as to creditors. For cases somewhat similar to this see Gallagher v. Rosenfield, 47 Minn. 507, 50 N. W. 696, and Greenebaum v. Wheeler, 90 Ill. 296.

Order affirmed.