## In re ESSEN.
### No. 5091.

District Court, D. Minnesota, Fifth Division. Feb. 18, 1933.

John D. Jenswold, of Duluth, Minn., for bankrupt and Arvid and Le Roy Essen, mortgagees.

A. E. Wheeler, of Duluth, Minn., for trustee.

NORDBYE, District Judge.

It appears that Harold Louis Essen, Le Roy Essen, and Arvid Essen were partners in a retail meat business in the city of Two Harbors, state of Minnesota. They were operating two shops—the Model Market at 606 Seventh avenue, and the Central Market, situated at 610 Seventh street—both of said markets being located in the said city of Two Harbors.

Differences arose among the partners, and it was agreed that Arvid and Le Roy should sell out their interests to Harold. It was estimated that the business was fairly worth $9,000, and the respective interests of each of the parties was computed to be $3,000 each. No cash was paid by Harold to either of his partners, but in consideration for the purchase of the interests of the partners, he executed to each of them a promissory note in the sum of $3,000, and secured these notes by two mortgages for $3,000 each, one running to Arvid Essen, and the other running to Le Roy Essen. Each of the mortgages contained the following reference to the personal property covered by the mortgages: "The entire stock, machinery and personal property of every description and nature, including bills receivable and accounts, used in the conduct of a meat business, known as the Model Market, situated at 606 Seventh Avenue, City of Two Harbors, Minnesota, and in the meat business known as the Central Market, situated at 610 Seventh Street, City of Two Harbors, Minnesota."

Both mortgages were dated October 23, 1928, and the note and mortgage running to Arvid Essen provided for payments at the rate of $75 per month for the first six months, with the first payment to be made on the 1st day of November, 1928, and thereafter the sum of $50 per month on the first day of each and every month until the full amount of the principal had been paid. The note and mortgage to Le Roy Essen provided for payments at the rate of $50 per month, the first payment to be made on the first day of November, 1928, and on the first of each and every month thereafter until the full amount of the principal had been paid.

Harold Louis Essen was adjudicated a bankrupt on the 22d day of August, 1932. The schedules indicated that the Arvid Essen mortgage had been reduced to the sum of $1,550, and the Le Roy Essen mortgage had been reduced to the sum of $1,750.

■ The referee found that "the mortgages covered stocks of merchandise, and that neither in the mortgage nor by oral agreement was there any limitation on the part of the mortgagor to dispose of the property mortgaged and apply the proceeds to his own use." He further found that there was no intention to perpetrate any fraud, and that the mortgages were given in good faith on account of the dissolution of the partnership, but held that under the settled law of the state of Minnesota, the mortgages were fraudulent, and hence void.

■ It is clear from the evidence that all of the personal property in these stores was mortgaged with the intention and understanding that the mortgagor should continue in possession, and the merchandise should be sold by the mortgagor from day to day in a retail business without any accounting to the mortgagees. Not only the stock on hand, consisting of meats, canned goods, etc., but bills receivable and the cash on hand, were covered by these mortgages. The parties admitted that no restriction whatsoever was placed upon the mortgagor in disposing of the stock on hand, or in collecting the accounts receivable. In fact, it was admitted that they expected he would continue in the conduct of a retail business, fully empowered to use the proceeds of the sales of any merchandise covered by the mortgages, in any manner that he (the mortgagor) determined. The accounts receivable were collected, and the money realized was utilized by the mortgagor for his own personal expenses, or for any other purposes that he deemed expedient. Some payments were made upon the mortgages, and some personal property not covered by the mortgages was turned over as part payment of the mortgage indebtedness, but no attempt was made to account for the sale of the mortgaged property, or to apply the proceeds of the sale of the mortgaged property upon the mortgage debt. The vice of such an arrangement must be apparent. Regardless of the sale of the mortgaged property, and notwithstanding the cash obtained from the collection of accounts receivable, the mortgage indebtedness remained intact. Such an arrangement could forever defeat the rights of creditors, because, irrespective of the sale of the mortgaged property,

the blanket mortgages still cover, by their terms, at least, all of the property on hand. The mere statement of the facts establishes the fraudulent character of these mortgages, regardless of the apparent good faith of the parties. The fact that certain fixtures have remained intact throughout the entire life of the mortgages will not permit the mortgagees to proceed against the property. If these mortgages are void because of fraud as to any portion of the property covered by them, they must necessarily be void altogether. See Horton v. Williams, 21 Minn. 187.

The decisions of this state clearly substantiate the conclusions reached by the referee. In the case of Donohue v. Campbell, 81 Minn. 107, on page 109, 83 N. W. 469, 470, the following significant language is found: "The settled doctrine of this court, which has been rigidly enforced, is that a mortgage on a stock of merchandise, which on its face expressly or by necessary implication authorizes the mortgagor to dispose of the property as his own, is, as a matter of law, without reference to the actual intent of the parties, fraudulent and void as to the other creditors of the mortgagor. Chophard v. Bayard, 4 Minn. 533 (Gil. 418); Horton v. Williams, 21 Minn. 187; Stein v. Munch, 24 Minn. 390; Gallagher v. Rosenfield, 47 Minn. 507, 50 N. W. 696; Pierce v. Wagner, 64 Minn. 265, 66 N. W. 977, 67 N. W. 537; Pabst Brewing Co. v. Butchart, 67 Minn. 191, 69 N. W. 809 [64 Am. St. Rep. 408]."

The provision in the mortgages with reference to the right of the mortgagees to foreclose, in the event any portion of the property was removed or disposed of, loses its entire force and effect when it clearly appears that the mortgagees knowingly permitted the mortgagor to conduct a retail meat business for several years. This provision must be construed in light of the conduct of the parties.

In Pierce v. Wagner, 64 Minn. 265, on page 267, 66 N. W. 977, 978, 67 N. W. 537, Judge Mitchell stated: "Where the mortgagor of a stock of merchandise is allowed to remain in possession, and sell the property at retail, in the ordinary course of business, the only rule that is just as to other creditors is that, in order to render the mortgage valid, the debtor must part with all right to appropriate the property or its proceeds to his own use during the existence of the lien of the mortgage. From the early case of Chophard v. Bayard, 4 Minn. 533 (Gil. 418), down to date, this court has rigidly adhered to the doctrine that a mortgage is void as to cred-

itors which provides for the retention of mortgaged personalty by the mortgagor, accompanied with the power to dispose of it for his own benefit without satisfaction of the mortgage debt."

Some contention is made that a different rule should be applied because these mortgages were purchase-money mortgages. No distinction is made in the courts as to purchase-money mortgages, and such a mortgage is fraudulent, not only to creditors that may have been in existence at the time that the mortgage was given, but also as to future creditors. Of course, these mortgages are not, strictly speaking, purchase-money mortgages. The business was valued at $9,000. There were three partners. The present bankrupt was the owner of an undivided one-third interest. He purchased the remaining two-thirds interest from the mortgagees, and gave to each of the retiring partners a mortgage in the sum of $3,000 on the entire business. Consequently, these mortgages covered the undivided one-third interest which the mortgagor had before he purchased the interests of the retiring partners.

Therefore, in accordance with the views expressed herein, the decision of the referee dated October 17, 1932, wherein the said mortgages were set aside, and the trustee authorized to sell the property free and clear from said mortgages, is in all things approved and confirmed.