A. M. P. WHITTIER *vs.* CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.

March 9, 1878.

Charter Excepting Corporation from Operation of a General Law—Charter in Such Case Must be Pleaded.—Sections 1 and 2, *c.* 25, Laws 1872, entitled "An act to compel all railroad companies within this state to build proper cattle guards and fences," is to be presumed to apply to a railway company operating under a special charter, (which is not made a public act,) in the absence of any charter provision, pleaded and proved, by virtue of which such company is taken out of the operation of such sections.

Railroad—Negligence—Contributory Negligence—Omission to Build and Maintain Fences under Sections 1 and 2, c. 25, Laws 1872.—Under said sections 1 and 2 the omission to build and maintain a fence is, in itself, negligence on the part of a railway company. But though the failure to

build and maintain fences is thus made an act of negligence on the part of the company, this does not exclude the operation of the general rule regarding contributory negligence, and its effect as respects a right of recovery against such company.

**Negligence—Assented to by Party Injured.**—When the very act of negligence on the part of the company, to-wit, the neglect to build or maintain a fence, has been assented to, agreed to, and licensed by the owner of land adjoining the railroad, whose cattle have been killed in consequence of such neglect, the case is one in which such land owner has contributed to the very act of negligence of which he complains. The act may be said to be his own, as well as that of the company, and by his participation in it he disentitles himself to recovery for its consequences.

**Plaintiff Need Not Disprove Contributory Negligence.**—*Hocum* v. *Weitherick,.* 22 Minn. 152, followed as to the point that contributory negligence is not required to be *disproved* by the plaintiff, in a case of this kind, in order to make out a *prima facie* case.

This action was brought in the district court for Dakota county, to recover the value of fifteen head of cattle, alleged to have been killed through the negligence of the defendant. The complaint alleged that the defendant was operating the road of the Hastings & Dakota Railway at the time of the alleged negligence, and "was daily running trains of cars over said road without building and maintaining a good and sufficient fence, where the same passed through   *   *   and over the lands belonging to the plaintiff, as required by chapter 25, General Laws of the State of Minnesota, for the year 1872, and at the place where the injury   *   *   was committed no fence had been constructed on either side of the road." The case was tried by *Crosby,* J., and a jury. The plaintiff having rested, the defendant moved for a nonsuit, upon the grounds that the plaintiff had failed to prove negligence in the defendant, and had himself contributed to the loss of the cattle by his own negligence. This motion was denied, and defendant duly excepted. All the evidence having been introduced, the court charged the jury, in part, as follows :

"With reference to the   *   *   *   *   killing of the

stock, it is admitted that the said railroad company has the right to operate their road through the land of the plaintiff. It is a duty imposed by law that this road shall construct and maintain good and substantial fences on both sides of its road.    The charter under which the road operated and erected its fence was that it was to be of boards or rails five and one-half feet high.    The law provides, also, that the company shall be liable for all damages sustained by any persons by reason of negligence to keep and maintain such fences.

&ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast;

"I am requested, gentlemen of the jury, by the defendant to instruct you that to entitle the plaintiff to recover in this action for the killing of the stock complained of, it must appear that the injury was occasioned by the negligence of the defendant, and it must also appear that there was no contributory negligence on the part of the plaintiff which contributed to the injury, unless you find that the injury was wilfully, wantonly or intentionally inflicted.    That I give you, gentlemen of the jury, as the law.    But I instruct you that the omission to maintain fences on each side of the company's road is an act of negligence, and would be sufficient to charge the company with all damages resulting from the omission to perform that duty, unless the acts of the plaintiff contributed to the injury.    If the acts of the defendant were wanton or wilful, why then they would be liable in any court.

"I am requested by the defendant to instruct you that it devolves on the plaintiff to prove that the stock was killed by the negligence of the defendant, and that plaintiff's negligence or carelessness did not contribute to the injury.    I give you that instruction, gentlemen of the jury.    But I have already stated that the omission to build and maintain a good and substantial fence is an act of negligence, if you find that to be a fact.

"I am also requested to instruct you that if the jury find the defendant fenced its road at the point where the stock got on to the same and was killed, or put in suitable bars there at the time

it was built, and the plaintiff afterwards, without the permission of the defendant, tore the fence down and put up bars therein in its place for his own convenience and benefit, and failed to keep them shut or put up so as to protect his stock from entering on the railroad track, knowing that engines and cars were daily passing over the same, and placing his stock in the pasture knowing that there was nothing to prevent them from straying on the track, it was an act of negligence on the plaintiff's part; and if proved that such acts of the plaintiff contributed to the injury complained of, the plaintiff cannot recover for such injury, and your verdict should be for the defendant on the first cause of action in the complaint. That is the law, gentlemen of the jury. If a railroad company fences its road, and the owner of the land goes and takes down the fence, and by reason of having taken the fence down stock strays upon the railway track, and the act of taking the fence down contributes to the injury, he is guilty of contributory negligence and could not recover. But this only applies to the act of the individual himself. If his cattle should break down the fence, and he should not put them up, and they remained down after his cattle had broken them down some three or four years, why that would not be regarded as contributory negligence on the part of the plaintiff, and the company would have notice that they were down. If they remained down some three or four years, it would be a sufficient length of time that they were down.

*    *    *    *    *    *    *    *    *

"Much testimony, gentlemen of the jury, has been given with reference to cattle guards and crossings at this point. There is no law, gentlemen of the jury, that I am aware of, and counsel have not been able to call my attention to any, which charges a railroad company with the duty of constructing and maintaining private crossings. If that duty became imposed on a railroad company and the owner of the land, and there are reciprocal rights and duties with reference to such private crossings and cattle guards, would depend entirely

upon the terms of the contract made between the railroad company and the individual.

"In this case, gentlemen of the jury, there is no evidence that any such contract was made. There is no evidence that there was a contract between the railroad or Hastings & Dakota company, or the defendant in this action, that they should put in the cattle guard or contracted to maintain a crossing for Mr. Whittier. * * * * * * * * *

"Then as to the duties and rights of the railway company and Mr. Whittier: It was the duty of the railway company, the defendant in this case, to construct and maintain fences upon both sides of the road across Mr. Whittier's land. There is the duty imposed upon them by the law and the charter under which they are operating their road, and also by the general law of the state. Mr. Whittier had the right to use the remaining portion of his land which he had not conveyed to the railroad company. He had a right to use it for such purposes as he saw fit. If he turned his cattle upon that land, and the railway company failed to erect or maintain the fence, then Mr. Whittier was not guilty of negligence in so doing. It was the duty of the company to erect and maintain fences. * * * * * * * * *

"If Mr. Whittier knew that they had not performed their duty, the knowledge would not deprive him of the right to use his land. He had the right to use his land; he had the right to turn his cattle upon it, and if, upon failing to perform their duty, the cattle strayed upon the railway track and were killed, it was the negligence of the defendant, to which the acts of the plaintiff did not contribute. * * * * * * * * *

"But, as I said before, if they erected their fences, built the fence as the law required them to build, and then Mr. Whittier went and took away the fence, and that by reason of his taking them down and leaving them down the cattle strayed upon the track, why, then, it would be negligence of Mr. Whittier that occasioned the injury and not of the railroad company,

and Mr. Whittier could not recover.   I am speaking of the acts of Mr. Whittier, not those of his cattle.   If the cattle broke the fences down and the railroad company did not put them up they were guilty of negligence.   If the fence was taken down at Mr. Whittier's request, it would be the same as though they had been taken down by himself.   An act done by the request of another is in effect an act done by him."

The defendant duly excepted to the portions of the charge above quoted, and also to the refusal of the court to charge in accordance with the following requests:

"If you find that after the fence was built the plaintiff desired to use this strip for his own convenience and benefit as a private crossing, and took away the fence and bars, or suffered them to be destroyed by his own cattle, and did not replace the same after they were so taken away or destroyed, and persistently left them open and suffered his cattle to run in the pasture in that condition, he was guilty of negligence, and if that negligence contributed to the killing of the stock he cannot recover for them.

"If the plaintiff requested of the company to leave a crossing at this place where the stock was killed, and to put in cattle guards on each side, and it did so, with suitable fences to the cattle guards to prevent cattle from straying on the track, except at the crossing so provided, and the plaintiff did not request bars or gates to be put across said crossing, it was not required to construct such gates or bars, but was justified in leaving said crossing open, especially if the plaintiff had himself taken the bars or fence away which the defendant or his predecessors had erected across said crossing, or had suffered the same to be destroyed by his cattle, and had for a long time thereafter suffered the same to remain in that condition, the railway company was not required to rebuild the fence or put in the bars without being requested so to do by the plaintiff.

"It was at the plaintiff's option as to whether he would have the crossing opened or closed, and the defendant had a

right to presume that the plaintiff desired an open crossing there if he opened the same and removed the fence or bars, or caused the same to be removed, and the defendant had a right to act on that presumption until the plaintiff requested it to be closed again.

"If you find that there was no such request on the part of the plaintiff after he moved the fence or bars, or caused or suffered the same to be removed, (if you find the plaintiff did so,) and before the happening of the event complained of, then the railroad company was not required to keep up and maintain a fence or bars across said crossing from that time, and there was no negligence on the part of the defendant in not keeping up and maintaining bars or fences across said crossing.

"If the plaintiff put his cattle in the pasture, knowing that the crossing was open, and that there was nothing to prevent them from straying on the defendant's track, knowing that trains were frequently passing over the same, he took the chances of the same being killed, and cannot recover for the value thereof unless he shows that the killing was occasioned by the negligence or carelessness of the person in charge of the train."

The jury rendered a verdict for the plaintiff. The defendant moved for a new trial. The motion was denied, and defendant appealed.

*Smith & Hale*, for appellant.

It was necessary for the plaintiff not only to prove negligence upon the part of the defendant, but also the want of negligence upon his own part, (*Donaldson* v. *M. & St. P. R. Co.* 21 Minn. 293, 297; *Lane* v. *Crombie*, 12 Pick. 177; *Wilds* v. *Hudson River R. Co.* 24 N. Y. 430; Sher. & Red. on Neg. 43, and notes,) because the character of plaintiff's imputed negligence was not such as to prove *prima facie* the whole issue. *Johnson* v. *Hudson River R. Co.* 20 N. Y. 65, 73; *Lane* v. *Crombie*, 12 Pick. 177; *The Aurora B. R. Co.* v. *Grimes*,

13 Ill. 585, 587; *Brown* v. *M. & St. P. R. Co.* 22 Minn. 165, 166; Sher. & Red. on Neg. 43.

Moreover, there was no evidence in the case tending to show where the cattle were before they entered on the railroad track—whether on the plaintiff's land, or his neighbor's land, or on the common; and no evidence tending to show that they got on the track where the road was not fenced; or as to what place on the track they were killed. And, even if we are to presume that the cattle were in the pasture, and that they strayed from thence on to the railroad track by way of the crossing described in the testimony, still we claim that the evidence of the plaintiff shows that under the circumstances there was no negligence on the part of the defendant in not maintaining a fence at the crossing, so far as the plaintiff's rights were concerned, and that the plaintiff was himself negligent in suffering his cattle to run there at that time. *Locke* v. *First Div. St. P. & P. R. Co.* 15 Minn. 351, 360.

Again, the defendant was not bound to fence the road under the general law, (Gen St. c. 25,) and the plaintiff did not seek to render the defendant liable under its charter. Sp. Laws 1857, p. 156; Sp. Laws 1866, p. 25; Sp. Laws 1867, p. 31; Sp. Laws 1866, c. 12, §§ 12, 15. It would, therefore, seem to be manifest that the motion for a nonsuit should have been granted. *Devine* v. *St. P. & S. C. R. Co.* 22 Minn. 8; *Winger* v. *First Div. St. P. & P. R. Co.* Id. 11.

The question as to whether the fence was removed at the crossing at the request of the plaintiff, (*Hurd* v. *Rutland & Burlington R. Co.* 25 Vt. 116, 124–126,) whether there was a contract between the plaintiff and defendant that the latter should put in a cattle guard or maintain a crossing, (*Hawkins* v. *Costigan*, 21 Wis. 545; *Cochran* v. *Toher*, 14 Minn. 385; *McClung* v. *Kelly*, 21 Iowa, 508, 511; *Hyde* v. *Stone*, 9 Cow. 230; *Moore* v. *Meecham*, 10 N. Y. 207, 212; *Hurd* v. *Rutland & Burlington R. Co.* 25 Vt. 116, 124–126; *C. H. & D. R. Co.* v. *Waterson*, 4 Ohio St. 424, 434,) and whether the negligence

v.24m—26

of the plaintiff did not contribute to the loss, (*Kegee* v. *C. & N. W. R. C.* 30 Iowa, 78–83; *Poler* v. *N. Y. C. R. Co.* 16 N. Y. 476–481; *Russel* v. *Hanley*, 20 Iowa, 219–224; *Marsh* v. *N. Y. & E. R. Co.* 14 Barb. 364; *Munger* v. *Tonawanda R. Co.* 4 N. Y. 349–369; *Rathburn* v. *Payne*, 19 Wend. 399; *Hartfield* v. *Roper*, 21. Wend. 615–622; *Henderson* v. *C. R. I. & P. R. Co.* 39 Iowa, 220–223; *Fero* v. *B. & S. L. R. Co.* 22 N. Y. 209–214; *C. & N. W. R. Co.* v. *Goss*, 17 Wis. 428–432; *C. & M. R. Co.* v. *Patchin*, 16 Ill. 198–202; *Erd* v. *City of St. Paul*, 22 Minn. 443–447; *Housatonic R. Co.* v. *Weatherby*, 23 Conn. 101; *I. P. & C. R. Co.* v. *Brownenburg*, 32 Ind. 199,) were for the jury to determine from all the evidence in the case.

After the plaintiff had changed the fence into a bar-way there was an implied obligation that he would keep the bars up, (*I. P. & C. R. Co.* v. *Shimer*, 17 Ind. 295; *I. P. & C. R. Co.* v. *Adkins*, 23 Ind. 340–344; *Ellis* v. *Pac. R. Co.* 48 Mo. 231–233; *I. P. & C. R. Co.* v. *Petty*, 25 Ind. 413; *Hurd* v. *Rutland & Burlington R. Co.* 25 Vt. 116, 124, 125, 126,) and the defendant was not thereafter liable for want of a fence at that place until notice was given it by plaintiff to restore the fence.

The removal of the fence and other acts done by the plaintiff were sufficient to establish negligence on his part, and to prevent him from recovering in this case where the defendant had shown no want of ordinary care at the time of the accident. *Trow* v. *V. C. R. Co.* 24 Vt. 487; *Bush* v. *Brainard*, 1 Cow. 78; *Tonawanda R. Co.* v. *Munger*, 5 Denio, 255; *Stucke* v. *M. & M. R. Co.* 9 Wis. *203.

*Clagett & Searles*, for respondent.

It was not necessary for the plaintiff to disprove contributory negligence on his part, (*Hocum* v. *Weitherick*, 22 Minn. 152,) and the fact that plaintiff allowed his cattle to pasture upon unfenced land adjoining the railroad did not constitute such contributory negligence. *Fritz* v. *First Div. St. P. & P. R. Co.* 22 Minn. 404; *Wilder* v. *Maine Cent. Railway*, 65 Me. 332; *Rogers* v. *Newburyport Railway*, 1 Allen, 17; *Gardner* v.

*Smith,* 7 Mich. 410; *McCoy* v. *C. & P. R. Co.* 40 Cal. 532; *Kellogg* v. *C. & N. W. R. Co.* 26 Wis. 223.

The obligation imposed by these statutes enacted for police purposes is without regard to what is usually deemed contributory negligence upon the part of the plaintiff. *Corwin* v. *N. Y. & E. R. Co.* 13 N. Y. 42; *Shepard* v. *N. Y. & E. R. Co.* 35 N. Y. 641; *Purdy* v. *N. Y. & N. H. Co.* 61 N. Y. 353; Sher. & Red. on Neg. § 456.

BERRY, J. This action is brought to recover damages for running into the plaintiff's cattle with a railway train, and killing them, upon the track of the Hastings & Dakota Railway, which was being operated by defendant.

The complaint is framed upon the idea that sections 1 and 2, c. 25, Laws 1872, entitled "An act to compel all railroad companies within this state to build proper cattle guards and fences," apply to the Hastings & Dakota Railway Company. Judicially speaking, this is to be presumed to be the fact, in the absence (as in the case at bar) of any charter provision, pleaded and proved, by virtue of which such company is taken out of the operation of said sections.

Section 1 provides that "all railroad companies in this state shall, within six months from and after the passage of this act, build, or cause to be built, good and sufficient cattle guards at all wagon crossings, and good and substantial fences on each side of such road."

Section 2, that "all railroad companies shall be liable for domestic animals killed or injured by the negligence of such companies, and a failure to build and maintain cattle guards and fences, as above provided, shall be deemed an act of negligence on the part of such companies."

The court charged, among other things, that the omission to build and maintain a fence was in itself negligence on the part of the railroad company.

This is unquestionably a correct statement of the rule of law presented by section 2 above cited, but there was evidence in the case going to establish the following state of facts:

The plaintiff was the owner of a tract of land used by him as a pasture, which was divided into two parts by the Hastings & Dakota Railroad, running easterly and westerly. The water for stock pastured was upon the south side of the track. The company built a board fence upon both sides of its road through plaintiff's land, leaving at one place in the south fence a bar-way. The plaintiff, for his own convenience, and of his own motion, removed the boards from the north fence, opposite the bar-way in the south fence, and made a bar-way there also. For some considerable time he made use of the place where the bar-ways were as a crossing for his stock from one side of the road to the other, and kept up the bar-ways for that purpose. The bars were frequently broken down by his cattle. Yet for about two years the plaintiff kept them up, but finding this to be troublesome he abandoned the idea of keeping them up, and for some four or five years, and up to the time of the injury complained of in this action, they were suffered to be down, so that during such period the plaintiff's cattle could pass, and did pass, back and forth over the crossing at will, and without any obstruction. To this condition of things no objection appears to have been made, either by the plaintiff or by the company. From these facts we are of opinion that a jury would have been warranted in inferring that so much of the fences as consisted of the bar-ways was, by the common consent of the plaintiff and the company, opened and left open, so as to furnish a convenient crossing for the plaintiff's accommodation. In other words, that it was so opened, and left open, upon and in pursuance of a tacit understanding between the parties that it should be for the purpose mentioned. Though this understanding may never have been expressed in any set form of words, it would, nevertheless, possess the element of an agreement or license, and be such in legal effect.

Now section 2, of the act of 1872, declares that "all railroad companies shall be liable for domestic animals killed or injured

by the negligence of such companies, and a failure to build and maintain cattle guards and fences, as above provided, shall be deemed an act of negligence on the part of such companies." But, though the failure to. build and maintain fences is thus made an act of negligence on the part of the companies, this does not exclude the operation of the general rule regarding contributory negligence, and its effect as respects a right of recovery. Where the very "act of negligence" on the part of the company, to-wit, the neglect to build or maintain a fence, has been assented to, agreed to, and licensed by the land owner whose cattle has been killed in consequence of such neglect, the case is one in which he has contributed to the very act of negligence of which he complains. The act may be said to be his own as well as that of the company, and by his participation in it he disentitles himself to recovery for its consequences. The application of the maxim, *quilibet potest renunciare juri pro se introducto,* leads to the same result. As between the land owner and the company the understanding in pursuance of which the building or maintenance of the fence is dispensed with has relieved the company from its obligation to build or to maintain. Some of the instructions given by the court to the jury, as well as one or more of the refusals to instruct as requested by defendant, are inconsistent with these views of the proper rules of law applicable to the evidence, and must, therefore, be held erroneous, and for this reason there must be a new trial. This disposes of what appears to us to be the principal questions in the case as it stands. *Hocum* v. *Weitherick,* 22 Minn. 152, determines that contributory negligence is not required to be disproved by the plaintiff, in the trial of an action of this kind, to make out a *prima facie* case.

With reference to the point that the charter of the Hastings & Dakota Railway Company contains a special provision as to fencing which exempts the company from the operations of sections 1 and 2 of the act of 1872, we observe that if such

provision is relied on it should be pleaded and proved, as the charter is not, so far as we discover, made a public act.

The order denying a new trial is reversed, and a new trial directed.