## GEORGE C. LAWRENCE v. JAMES B. STREETER and Another.[1]

June 11, 1915.

Nos. 19,359—(252).

**Rescission of contract — defendant not liable as codefendant.**

Defendant Streeter contracted in his own name to purchase a large quantity of real estate, and subsequently contracted in his own name to sell such real estate to plaintiff. Plaintiff rescinded the contract for fraud, sued to recover the payments made, and recovered a verdict therefor against Streeter. He also sought to recover against defendant O. W. Kerr Co., on the claim that that company had made a contract with Streeter to engage in a joint business and had made a settlement with him in respect to such business which made that company responsible for his acts. In the transactions complained of, Streeter purported to act solely for himself, and plaintiff dealt with him under the supposition that he was acting solely for himself, and, as such transactions were outside the scope of the joint business in which Streeter and the Kerr Co. were engaged, that company is not liable for the wrongful acts in question.

[1] Reported in 153 N. W. 126.

Action in the district court for Hennepin county against James B. Streeter and O. W. Kerr Co. to recover $20,318. The case was tried before Hale, J., who granted the motion of defendant Kerr Co. to dismiss the action. From an order denying his motion for a new trial, plaintiff appealed. Affirmed.

O'Brien, Young & Stone, for appellant.

Koon, Whelan & Hempstead, for respondent.

TAYLOR, C.

On November 29, 1911, defendant Streeter entered into a contract with the Birchwood Lumber Co. for the purchase of 5,279.79 acres of land located in Aitkin county. The contract stated that the purchase price was the sum of $52,797.90, of which the sum of $16,239.47 had been paid, and provided for payment of the remainder thereof in instalments upon dates specified therein. Streeter exhibited this contract to plaintiff, and, on December 18, 1911, contracted to convey the land to him upon the same terms upon which it had been purchased from the lumber company, with a further agreement that the profits arising from a resale of the land should be divided between them. Plaintiff paid Streeter $16,350, and on March 1, 1912, paid the Birchwood Lumber Co. an instalment of the purchase price which fell due on that date, and on May 31, 1912, paid the taxes upon the land. In August, 1912, plaintiff rescinded the contract for fraud practiced upon him by Streeter, and in October, 1912, brought this action to recover the amounts he had paid. He made the O. W. Kerr Co. a codefendant with Streeter, and alleged that Streeter was associated with that company in business, and represented that company as well as himself while committing the acts which constituted the fraud. The trial resulted in a verdict against both defendants for the full amount claimed. Thereafter the trial court granted a new trial to defendant O. W. Kerr Co., but the original verdict still stands in full force against defendant Streeter. At the second trial it was admitted that Streeter was guilty of the fraud charged, and the question litigated was whether the relations between Streeter and the O. W. Kerr Co. were such as to render that company liable in damages for the wrongful acts of Streeter.

130 M.—5.

At the close of the trial the court dismissed the action as to the O. W. Kerr Co., on the ground that the evidence failed to establish any cause of action against that company. Thereafter plaintiff made a motion for a new trial, and appealed from the order denying his motion.

Plaintiff had no transactions of any kind with the O. W. Kerr Co., and that company not only took· no part in the purchase by Streeter from the Birchwood Lumber Co., nor in the sale by Streeter to plaintiff, but had no knowledge of any such transactions until after plaintiff had consummated his purchase.

The O. W. Kerr Co. is a corporation located at Minneapolis and engaged in the business of selling real estate upon commission. Its articles of incorporation prohibit it from incurring any indebtedness or liability for the purchase of real estate. Defendant Streeter was also a real estate agent residing in Minneapolis. In the early part of August, 1911, Streeter represented to the Kerr Co. that he had a number of large deals in progress which he was unable to complete for lack of money to defray traveling and other necessary expenses, and made a proposition to divide profits if they would supply him with funds. This proposition resulted in the following agreement:

"August 8, 1911.

"Mr. J. B. Streeter,

"Minneapolis, Minn.

"Dear Sir:

"Confirming our conversation of yesterday and upon your representation that you have several large land deals pending and have a number of tracts of land for sale, that you also have some prospects and prospective customers in view, you having made us the proposition to co-operate with you in the handling of these deals or any other deals of a similar nature which you may have or be able to get, in consideration of a division of all profits arising out of or through your work, 50% of the profit going to you and 50% to this company, we agree to advance you expense money to aid you in handling these deals not to exceed $500.00 a month, commencing August 1st and ending January 1st, 1912, it being understood that

you are to devote your entire time to the handling of these so-called wholesale tracts. That you shall file with the company here complete and full description and all data pertaining to every deal of this nature that comes to your hands during this period so that this company shall have an opportunity to co-operate with you.

"It is further understood that the company will aid you in every way possible in the handling of any such deals and the sales made, either by the company or by you, on any deals that are in your hands or any deals that are turned over to you by the company, the profits to be divided 50% to each party after first deducting out of your interest any moneys that have been advanced. It is understood that if no business is done and no profits accrue by January 1st, you shall not be liable for moneys that have been advanced. You are to render to the company full report on all deals pending, turning to the company any information regarding tracts of land received by you, also information regarding any prospective purchasers, and keep the company fully advised of all negotiations pending either for the sale of any tract of land or obtaining options for listings upon any tracts of land. Any options for the sale of lands shall, at the option of the company, be taken in the name of The O. W. Kerr Company or O. W. Kerr, personally. Any commission contracts or contracts representing profits to be deposited for collection with the company and when collections are made the profits to be divided 50% to be paid to you by the company and 50% retained by the company. The company shall furnish you office room, stenographic service, stationery and postage as you require.

"I have written this letter in duplicate and, if satisfactory, you can note your acceptance of same, retaining one copy for yourself and returning the other to the company, and this letter shall constitute the only contract and agreement between us.

"Yours very truly,

"The O. W. Kerr Company

"By O. W. Kerr,

"President.

"I hereby accept terms and conditions set forth in above letter.

"J. B. Streeter."

After the making of this agreement, some letter heads were printed for the company, in which Streeter was designated as manager of the wholesale department. He visited the office only occasionally, but drew money from the company until in December he had received in the aggregate between $2,000 and $2,600. He never made any reports to the company and, when pressed to do so from time to time, stated that he was about closing some profitable deals and would report upon them shortly. Failing to obtain any satisfactory information from Streeter, the company began an investigation in the latter part of December, 1911, to ascertain what he had been doing and what business he had transacted. Among other things, they learned that he had had dealings with plaintiff, and sent a representative to plaintiff's home in Iowa, to whom plaintiff disclosed the terms of the contract between himself and Streeter for the purchase of the Aitkin county land. They also interviewed the Birchwood Lumber Co. concerning the contract between that company and Streeter, but plaintiff objected to the reception in evidence of the information so obtained and it was excluded. The record discloses that on November 28, 1911, Streeter received $11,000 from a transaction, the nature of which plaintiff would not permit the company to show, but what the company learned in respect to Streeter's other deals does not appear. The contract between Streeter and the company expired by its terms on January 1, 1912, and the company insisted upon having the settlement. On January 4, 1912, the president of the company with his attorney met Streeter with his attorney for the purpose of adjusting matters. The president asserted that they had advanced over $2,500 and had received nothing; and that Streeter had agreed to devote his entire time to business in which the company was interested, but had broken the agreement by almost entirely ignoring such business and doing business for himself. Streeter conceded this, but stated that conditions had changed since he went in with the company, and that he had acquired some capital of his own, and had made some deals in which he had made some money. No accounting was attempted in respect to Streeter's transactions, but after some bickering they agreed upon a settlement, and executed a written agreement setting forth the terms thereof, which

was prepared by Streeter's attorney. By the terms of this agreement Streeter paid the company $2,000 on the date thereof, and promised to pay them $2,000 more 40 days from that date. The agreement further recited that Streeter was the owner of five several contracts for the purchase of lands, and provided that, in case he succeeded in selling such contracts or the lands therein described, he should pay the company a specified sum from the proceeds of each contract so disposed of. The contract in respect to the lands sold plaintiff was not one of the five so listed. Streeter never disposed of or consummated any of the contracts so listed, and nothing was ever received from any of them. The agreement further released and discharged each party from all claims and demands on the part of the other, and particularly released and discharged Streeter from any claim or demand on the part of the company on account of "the contract or sales made to one George C. Lawrence." This special provision in reference to the contract with plaintiff was inserted at Streeter's instance. This settlement was made on January 4, 1912, and the fraud perpetrated upon plaintiff by Streeter was not discovered by either plaintiff or the company until the following August.

Although conceding that the company had no knowledge of the transactions complained of, plaintiff seeks to fasten liability upon them by virtue of their contract with Streeter and of the settlement made with him. In his transactions with plaintiff, Streeter purported to be acting for himself only, and plaintiff dealt with him upon that supposition and did not understand that the Kerr Co. had any connection with the matter. Consequently no question as to Streeter's apparent authority is involved, but only the question as to whether he in fact represented and acted for the Kerr Co. in such transactions. Streeter entered into a contract in his own name to purchase a large quantity of land and obligated himself to pay a large amount of money for it. This contract was not an option but an agreement to buy and pay for the land. A careful examination of the contract between Streeter and the Kerr Co. discloses that Streeter is nowhere authorized to make any such contract on behalf of the Kerr Co. as he made with the Birchwood Company. Neither is he

authorized to obligate the Kerr Co. to purchase and pay for any land whatever. The charter of that company prohibited it from incurring any indebtedness for the purchase of land; and its contract with Streeter cannot be construed as authorizing Streeter to impose indebtedness upon it for such purpose. Whatever may have been the relations between Streeter and the Kerr Co., it is clear that the transactions in question were outside the scope of the contract between them. While the profits derived by Streeter from his contracts doubtless had a bearing in fixing the amount which he agreed to pay the Kerr Co., there is no pretense that he accounted to that company for such profits or undertook to do so. He had received $11,000 in one sum, and appears to have received profits from other deals the amount of which is not shown. Plaintiff paid him the sum of $16,-350 to reimburse him for the cash payment which he claimed to have made to the Birchwood Company. It was discovered in August that he had paid that company no more than $3,000 and consequently had received from plaintiff over $13,000 more than he was entitled to, but no claim is made that he divided this money with the Kerr Co., nor that the Kerr Co. had any knowledge of the matter until long after the settlement. In this settlement the Kerr Co. did not take over any of Streeter's contracts, nor undertake to carry out or consummate any such contracts, nor to assist Streeter in carrying out or consummating them; and it cannot be held that, by the agreement for settlement, they adopted or ratified his transactions so as to make such transactions their own, or so as to render them liable for his wrongdoing in respect thereto. As he had no authority to make the contracts in question for or on behalf of the Kerr Co., and as that company has not adopted or ratified such contracts, the learned trial judge was correct in his conclusion, and the order appealed from is affirmed.

Order affirmed.