## EDWARD F. BERKNER AND ANOTHER v. JAMES LEWIS.
## EDWARD F. BERKNER AND ANOTHER v. WILLIAM SCHMITT.
## EDWARD F. BERKNER AND ANOTHER v. MARTIN SHERMAN.[1]

### June 30, 1916.

### Nos. 19,785, 19,786, 19,787—(169, 170, 171).

**Replevin — chattel mortgage of crops and animals not fraudulent — findings.**

Plaintiffs, as second mortgagees in these replevin actions, attack the

[1]Reported in 158 N. W. 612.

title of defendants claiming under a prior chattel mortgage, on the ground that the first mortgage was fraudulent as to creditors. The court found the first mortgage was executed in good faith and not with intent to hinder or defraud creditors. It is *held*:

(1) The finding is not demonstrably wrong, even if the first mortgage was given with the understanding and agreement that part of the mortgaged property might be consumed by the animals, also mortgaged, or with the understanding that the mortgagor, a farmer, might use sufficient for his living from the mortgaged property, the mortgage covering all the crop and animals on the farm, since the property so needed is exempt from the reach of creditors.

(2) The finding is sustained that the auction sale of the property, made by the mortgagor at the instance of the first mortgagee, was in good faith.

(3) There was no equity in the property after the same, or its full value, was applied on the first mortgage so that plaintiffs could predicate these replevin actions thereon.

Three actions of replevin in the district court for Brown county by Edward F. Berkner and Alfred A. Berkner, copartners as Berkner Brothers, one action against Dudley G. D'Evelyn, another against William Schmitt and the third against Martin Sherman. After the death of Dudley G. D'Evelyn, his adminstrator, James Lewis, was substituted in his place as defendant. After the death of William Schmitt, his administrator, Nicklas Schmitt, was substituted in his place as defendant. The cases were tried together before Pfau, J., acting on behalf of Olsen, J., who made findings and ordered judgment in favor of defendant in each action. From the judgment entered in each action pursuant to the order for judgment, plaintiffs appealed. Affirmed.

*Tom Davis, H. M. Lamberton* and *Brown, Abbott & Somsen,* for appellants.

*Edward C. Farmer, August G. Erickson* and *L. G. Davis,* for respondents.

HOLT, J.

This is a second appeal; the first was Berkner v. D'Evelyn, 119 Minn. 246, 137 N. W. 1097. The controversy is between plaintiffs, claiming the horses replevied under a second mortgage, and defendants who stand in

the shoes of a prior mortgagee. Pursuant to findings a judgment was entered in favor of defendants, and plaintiffs appeal.

In the fall of 1907 or the spring of 1908, W. L. Cunningham leased a farm of F. H. Curtright. The former assisted the latter in procuring horses and equipment to operate the farm, either by purchasing the same for him or selling his own to him. To secure the indebtedness of $2,288 thus incurred, Curtright, on April 14, 1908, gave a chattel mortgage to Cunningham. The mortgage, duly filed with the town clerk on the same day, covered several horses, among them being the three here replevined, all the farm machinery, implements and equipment, an undivided half of the increase from the cattle, hogs and chickens on the farm (the cattle, hogs and chickens in being on the farm in August, 1907, with the exception of two calves, were owned by Cunnningham, half the increase of which should go to Curtright), and also Curtright's share of the crops raised on the farm in 1908 including the hay. On March 19, 1909, Curtright gave a chattel mortgage to plaintiffs covering essentially the same equipment, including the horses in controversy, to secure the sum of $393.23, and therein it was stated that the property was free from incumbrances except the Cunningham mortgage. In the fall of 1910 there was due and unpaid upon the Cunningham mortgage more than $2,000 and he demanded payment. Thereupon, at his instance, Curtright advertised and held a public auction, October 6, 1910, of all the property covered by the mortgage, under an arrangement that the amount realized should be applied upon the mortgage debt. The property sold for less than $1,600. After applying some other payments made by the mortgagor, there is still claimed to be more than $100 unpaid on the Cunningham mortgage. At this auction sale two of these defendants bid in a horse each, and the third defendant bought one which Cunningham bid in at the sale. None of defendants had actual knowledge of plaintiffs' mortgage, but it having been duly executed, witnessed and filed, as held upon the former appeal, they had constructive notice. In March, 1911, these actions were instituted by plaintiffs, one against each defendant, to recover the possession of the three horses so procured by defendants.

The court found: "That the mortgage so given to said Cunningham by said Curtright was given in good faith for the purpose of securing the payment of moneys actually due and owing from said Curtright to said

Cunningham, and was not given for the purpose of defrauding either the plaintiffs herein or any other person; and the sale so made, and conducted by said Curtright, through the instance and request of the said Cunningham, was made in good faith for the purpose of securing money to pay said mortgage, and said sale was not made with the intention or for the purpose of defrauding the said Berkner Brothers, the plaintiffs herein or any other person."

The foregoing finding is a vital turning point in the case and is vigorously assailed as being contrary to the evidence. If it appears that the Cunningham mortgage was given upon an agreement or understanding between the parties thereto that Curtright might appropriate any part of the mortgaged property which a creditor could reach to his own use, without applying its value or price upon the mortgage debt, the legal conclusion follows that it was made to defraud creditors and is void. Our decisions from Horton v. Williams, 21 Minn. 187, down to Harris v. Spencer, 130 Minn. 141, 153 N. W. 125, so hold. There is nothing in the mortgage itself from which such an agreement may be spelled out. Whether there was an oral agreement to that effect was a question of fact which the court resolved against plaintiff. Donohue v. Campbell, 81 Minn. 107, 83 N. W. 469. The court could properly find that there was no intent to hinder or defraud creditors. Cunningham held a just claim for a large amount against Curtright, and was anxious to have valid and sufficient security. He might well doubt whether, in the event of the farming operations turning out badly, the property which Curtright had to give as security would prove adequate, and naturally tried to provide against subsequent creditors coming in and taking from under him any legitimate security which Curtright on April 14, 1908, was able to give him. The testimony of Curtright does not indicate an actual intention on Cunningham's part to circumvent any future creditors of Curtright, and there is no evidence that at the date of the mortgage the latter was indebted at all except to Cunningham. Cunningham swears he harbored no intention to hinder or defraud Curtright's creditors, but was actuated solely by a legitimate purpose to secure the payment of a just claim. We think the situation of the parties corroborates this testimony.

It is, however, claimed that Cunningham's admissions prove an actual

oral agreement that part of the mortgaged property might be consumed, hence a conclusive legal inference of an intention to defraud. Cunningham was evidently not a man of education, but an ordinary farmer who kept no written account or memoranda of his dealings, and so was Curtright.. Neither had any data from which could be determined the date and the amount of payments made upon the debt from the produce brought in from the farm. It would seem that, with the assistance of the banker who financed the auction sale, and perhaps by consulting elevator men and merchants who had had to do with the farm produce, some sort of account was stated between Curtright and Cunningham just after the auction. However, the testimony of Cunningham gives the impression that he intends to be frank and is not shrewdly attempting to color the facts in his favor. On cross-examination he was asked whether, at the time the mortgage was executed, he did not tell Curtwright that he could have the use of the mortgaged stuff for his living, and he answered that he told him he could use the cream checks for his living. When again pressed for a categorical answer to the question: "And did you tell him he could have the use of the other stuff for his living?" the answer was: "Yes, sir." It also appears, and subsequent conduct, while not conclusive, may be indicative of the claimed agreement, that Cunningham paid twine and threshing bills for Curtright and perhaps some of his living bills, and that some of the wheat was used by Curtright for his living; whether this was out of the crop mortgaged or subsequent crops is not disclosed. Undoubtedly part of the grain and hay raised went to feed the stock covered by the mortgage, and some of the animals were butchered and the meat consumed by Curtright's family. Are these facts conclusive against the finding above set out? We think not. The mortgage did not cover cream checks, nor any crops subsequent to that of 1908. Therefore the parties could sell and dispose of the crops of 1909 and 1910 as they saw fit, without affecting the validity of the first mortgage. We do not think an agreement that part of the crops mortgaged may be used to feed stock covered by the same mortgage, invalidates the mortgage as to subsequent creditors. If anything, such an agreement increases the value of the security and incidentally benefits creditors of the mortgagor. In the case of the mortgage of the stock upon a farm and the crops thereon, the transmutation of part of the crops into the stock would seem

to be a legitimate expectation, and properly within the contemplation not only of the mortgagor and mortgagee but also of creditors. In Pugh, Stone & Co. v. Harwell & Clark, 108 Ala. 486, 18 South 535, it was held that, where an insolvent farmer executes a mortgage upon corn, cotton, fodder, hogs, etc. and also upon the crops to be made during the current year, under which the mortgagor has the right to consume the property covered thereby in making and gathering the crop, the mortgage is not fraudulent or void as to creditors. This is followed in Kidd v. Morris & Co. 127 Ala. 393, 30 South. 508. See also Spurr v. Hall, 46 N. Y. App. Div. 454, 61 N. Y. Supp. 854, affirmed in Sperry v. Pisher, 168 N. Y. 593, 60 N. E. 1120.

As to the mortgagor's living: When plaintiffs took their mortgage 18 young cattle were on the farm, presumably the increase from Cunningham's cows and from which cows the tenant Curtright received the milk and cream. There must then have been a large number of cows, and the cream checks referred to by Cunningham, with the eggs from the chickens, might well have been considered ample for the living expenses of Curtright. And a fair construction upon Cunningham's testimony might well be that no other understanding as to the use of the mortgaged property was had at the time the mortgage was executed. Another consideration is this: A certain quantity of property necessary for support of self and family and certain animals, and feed for the same, are by G. S. 1913, § 7951, secured to a person, and these exemptions creditors may not touch. It is immaterial to them what agreements are made with respect to exempt property. What was needed for Curtwright's living out of the produce of the farm was exempt, and there is nothing to indicate that there was any agreement, either at the time the mortgage was made or afterwards, to appropriate any property covered by it to any purpose other than the mortgage debt, except such as might be needed for the actual subsistence of the mortgagor and family, and there is no showing that what was so used was not properly exempt. Vaughan v. Thompson, 17 Ill. 78; Foster v. McGregor, 11 Vt. 595, 34 Am. Dec. 713; Prout v. Vaughan, 52 Vt. 451; Gillespie v. Brown & Ryan Bros. 16 Neb. 457, 20 N. W. 632; Anderson v. Odell, 51 Mich. 492, 16 N. W. 870.

The finding that the auction sale was held in good faith and not for the purpose of defrauding plaintiffs, is no doubt well supported. The

notice of the sale was posted at plaintiffs' store. The court found that the property, including these horses, brought full value and the evidence is persuasive of that fact.

It was stipulated that the horses were of a certain value when these suits were brought in March, 1911. This was considerably more than what they sold for at the auction, when these animals were in poor condition and ailing. The purchasers spent some money and effort in treating them and had brought them through the winter. This naturally increased their value. But even so plaintiffs are not entitled to possession for the foreclosure of their mortgage, or for damages, unless there was some equity left in the property after its application in payment of the first mortgage. Such was not the case. There surely was not at the time of the auction sale, for the court found the total value of the property did not then exceed $1,600, and the debt exceeded $2,000. It was not enough for plaintiffs to prove that these particular horses had increased in value. To entitle them to any relief we think it was, at least, necessary to prove that when the suits were brought the total value of the property covered by the Cunningham mortgage exceeded the debt to him as it existed before the proceeds of the auction sale were applied thereon. There can be no right in the second mortgagee to select a certain item from among the many covered by the first mortgage, and take such item from the first mortgagee therein, because it has increased in value since the latter took possession, or allow damages for such increase. Under our former decision, and the cases of Faeth v. Leary, 23 Neb. 267, 36 N. W. 513, and Dempster Mill Mfg. Co. v. Wright, 1 Neb. 666 (Unoff.) 95 N. W. 806, it was necessary for plaintiffs to show that the value of the property exceeded the obligation secured by the first mortgage. This was not done. The defendants standing in Cunningham's shoes were rightfully in possession of the horses and these replevin actions cannot be maintained, nor any other actions, unless plaintiffs established a substantial and not merely a nominal interest in the horses. Tiedt v. Boyce, 122 Minn. 283, 142 N. W. 195.

We think the findings are sufficiently supported by the evidence. The judgments are affirmed.