## In re HANOVER MILLING CO.

District Court, D. Minnesota, Fourth Division.
March 23, 1929.

No. 7569.

S. A. Johnson and Henry Spindler, both of Buffalo, Minn., for petitioner.

Allen & Fletcher and G. A. Timerman, all of Minneapolis, Minn., for trustee.

SANBORN, District Judge. The referee determined: That the bankrupt was adjudicated March 2, 1928. That on March 31, 1928, James E. Mehan was elected trustee and qualified. That on February 15, 1920, and prior thereto, August C. Vollbrecht and Fred W. Vollbrecht had been doing business as copartners as Hanover Milling Company, their business consisting of the operation of a flour and feed mill. That on June 15, 1920, they executed a trust deed dated February 15, 1920, to H. E. Kirscht, to secure the payment of $25,000 of bonds. That the trust deed was recorded in the office of the register of deeds of Wright county, Minn., on July 13, 1920. That the Hanover Milling Company, now bankrupt, was organized in the month of June, 1922, and on June 16th of that year the partnership deeded its property to the corporation, subject to the trust deed, and the corporation assumed and agreed to pay the bonds and to operate its business and to conform to all the terms of the trust deed. That the business of both the milling company and its predecessor, the partnership, had been the operation of a flour and feed mill, and that both had bought grain, storing it in bins and elevators, ground feed, and manufactured and sold flour, feed, and other products. That between the 15th day of February, 1920, and the 2d day of March, 1928, there were on hand at all times in the mill and elevators quantities of flour, grain, and feed which the partnership and corporation sold from time to time to its customers, using the proceeds in meeting the expenses of operating its business, paying salaries, taxes, and interest on the bonds secured by the trust deed. That between the time of the execution of the trust deed and the filing of the voluntary petition in bankruptcy, certain machinery was installed in the mill. That the bonds secured by the trust deed were sold to various persons residing in or near the village of Hanover, Minn., a town of some 250 inhabitants. That Kirscht, the trustee under the deed, was a resident of Hanover; that he resigned as trustee, and Zachman is now the trustee. That the total amount of bonds outstanding is $25,000. That at all times subsequent to the execution and sale of the bonds, the holders thereof, the first trustee, and his successor were aware of the fact that the bankrupt, and previously the partnership, were conducting the business of the Hanover Milling Company in accordance with the terms of the trust deed. That the only source of income which the partnership and the corporation had was the money derived from the sale of flour, feed, and other products manufactured by it, and the grinding of feed. That the bonds have not been paid, nor has interest been paid upon them since August 15, 1927. The conclusion that the referee arrives at from these facts is that this trust deed is void as to creditors.

The trust deed in question recites that the Vollbrechts, "the mortgagors, are lawfully engaged in the business of manufacturing, buying, selling and generally dealing in flour, feed, grain, breakfast foods, and other articles manufactured from grains or cereals," and in operating in connection therewith grain warehouses, elevators, and cars for carrying of grain, flour, and food products; that improvements and additions to the plant are and will be needed; that the mortgagors have power to issue bonds and to secure pay-

ment of such bonds by the execution of a deed of trust and mortgage covering their property, franchises, rights, and privileges, now owned or hereafter to be acquired by them. It was also recited in the form of bond set forth in the trust deed that the bonds and trust deed are to be considered together as parts of one and the same contract. The trust deed covers the real estate upon which the mill is situated, 40 acres of ground partially converted into a reservoir for water backed from the dam, and the dam lying across the Crow river, with bulkheads, icebreakers, piles, fishway, canals, etc.; also all buildings, improvements, and appurtenances standing or constructed or placed on the lands, including flour mill, frame building, and other buildings specified, fixtures and fittings, machinery and equipment, "and all articles or items of property of every nature whatsoever now contained in any building or buildings standing upon said lands, or which may hereafter be contained in any building or buildings now erected or to be erected upon the said lands, or any part thereof." This trust deed was never filed as a chattel mortgage, but was recorded as a mortgage upon real estate.

The theory of counsel for the trustee in bankruptcy and of the referee is that the trust deed included the stock of flour and feed which the mortgagor was permitted to retain in its possession and to sell and dispose of without applying the proceeds to the payment of the mortgage debt, and that therefore, under the laws of Minnesota, it was fraudulent as to creditors.

An examination has been made of all the Minnesota cases which have been found in which the rule relied upon here has been invoked or referred to. These are: Chophard & Son v. Bayard, 4 Minn. 533 (Gil. 418); Horton v. Williams, 21 Minn. 187; Whittier v. Chicago, M. & St. P. Ry. Co., 24 Minn. 394; First Nat. Bank of Fergus Falls v. Anderson, 24 Minn. 435; Mann v. Flower, 25 Minn. 500; Bannon v. Bowler, 34 Minn. 416, 26 N. W. 237; Gallagher v. Rosenfield, 47 Minn. 507, 50 N. W. 696; Hayes Woolen Co. v. Gallagher, 58 Minn. 502, 60 N. W. 343; Pierce v. Wagner, 64 Minn. 265, 66 N. W. 977, 67 N. W. 537; Pabst Brewing Co. v. Butchart, 67 Minn. 191, 69 N. W. 809, 64 Am. St. Rep. 408; Donohue v. Campbell, 81 Minn. 107, 83 N. W. 469; Citizens' State Bank of Tracy v. Brown, 110 Minn. 176, 124 N. W. 990; Harris v. Spencer, 130 Minn. 141, 153 N. W. 125; Berkner v. Lewis, 133 Minn. 375, 158 N. W. 612; First Nat. Bank of Beaver Creek v. Wiggins, 154 Minn. 84, 191 N. W. 264; Secord v. Northwestern Tire Co., 159 Minn. 473, 199 N. W. 84. Each of these cases deals solely with a chattel mortgage.

The Supreme Court of Minnesota has never held that a mortgage covering both real estate and chattels, under which the mortgagor was permitted to retain possession of the chattels and to dispose of them without applying the proceeds upon the mortgage debt, was void as to the real estate.

There are, however, some statements in the earlier cases which would make it appear that if the mortgage is void as to any of the property covered by it, it is void altogether. Such a statement is found in the case of Horton v. Williams, supra, on page 192 of 21 Minn. But this language appears in that case: "The character of the instrument depends on the intent with which it was made. If the mortgage was made without fraudulent intent, and the mortgagee subsequently consented to a sale of all or a part of the mortgaged property, such a sale would discharge the lien of the mortgage on the articles sold, but would not operate retrospectively so as to avoid the mortgage itself." It was held in that case and subsequent cases that where the mortgage itself did not provide that the mortgagor in possession might make sales as owner, dealing with the goods and the proceeds as his own, the question of the intent with which the mortgage was made is a question of fact.

In the case of Gallagher v. Rosenfield, supra, on page 511 of 47 Minn. (50 N. W. 697), appears this language: "It is insisted by the defendant that since, by the terms of the mortgage, the mortgagor is only authorized to sell the stock in trade, the mortgage, though void as to the liquors and cigars, is valid as respects the fixtures and other property to which the license did not extend. The better opinion, supported by Horton v. Williams, 21 Minn. 187, is that the entire instrument is vitiated by the fraudulent provision as to a part of the goods. Russell v. Winne, 37 N. Y. 591 [97 Am. Dec. 755], and cases cited; Holt v. Creamer, 34 N. J. Eq. 181; Mead v. Combs, 19 N. J. Eq. 112; Wallach v. Wylie, 28 Kan. 138, 153. The unlawful design permeates the mortgage. The purpose was to authorize the mortgagee to continue and carry on the saloon business as owner in the use and sale of such parts of the property as were necessary for such purpose. The transaction must be considered as a whole. A chattel mortgage must be given in good

faith, and, when it appears that one object was to defraud creditors, the entire instrument is, in legal judgment, void. This is the only sound and safe rule. Wait, Fraud. Conv. (2d Ed.) § 434; Bump, Fraud. Conv. (3d Ed.) p. 487."

It is very evident that in some of the later cases the Supreme Court of this state has tried to avoid the harshness and obvious injustice of the rule in cases where there was no actual fraud. In the case of Donohue v. Campbell, supra, Chief Justice Start says, on page 109 of 81 Minn. (83 N. W. 470): "The settled doctrine of this court, which has been rigidly enforced, is that a mortgage on a stock of merchandise, which on its face expressly or by necessary implication authorizes the mortgagor to dispose of the property as his own, is, as a matter of law, without reference to the actual intent of the parties, fraudulent and void as to the other creditors of the mortgagor [citing cases]. While none of the opinions in these cases expressly states that, where the mortgage contains an express agreement authorizing the mortgagor to sell in the usual course of business, the mortgage is void unless it also contains an agreement that the mortgagor shall apply the proceeds of the sales to the payment of the mortgage debt, yet such is the necessary and logical inference from the facts of the cases and the language used by the court. Bannon v. Bowler, 34 Minn. 416, 26 N. W. 237. The rule adopted by the courts of one-half of the states which have passed on the question is that such mortgages are not, as a matter of law, fraudulent as to creditors, but the question is one of fact, unless they show expressly on their face that the mortgagor is to retain the proceeds of the sales for his own use. It may be true, and probably is, as claimed by plaintiff, that this is a just and logical rule, and in accordance with the trend of modern authority. Jones, Chat. Mort. (4th Ed.) § 415; Brett v. Carter, 2 Low. 458, Fed. Cas. No. 1,844; Etheridge v. Sperry, 139 U. S. 266, 11 S. Ct. 565 [35 L. Ed. 171]; Peabody v. Landon, 61 Vt. 318 [17 A. 781]; 15 Am. St. Rep. 903, 912, and notes; Ephraim v. Kelleher, 4 Wash. 243 [29 P. 985], 18 L. R. A. 604, and notes. However this may be, the rule adopted by this court is too firmly settled to be departed from, but it is not to be extended to cases not fairly falling within it." In that case, speaking of the mortgage there in question, the court said, on page 111 of 81 Minn. (83 N. W. 471): "The evidence is undisputed that the mortgage was given to secure an honest debt,—the pur-

chase price of the mortgaged property. It is a fact, however, that the mortgagor retained possession of the property, selling a portion thereof in the usual course of business, and that only $93.95 of the proceeds thereof were paid on the mortgage, and that the mortgagee knew this fact. There was evidence tending to show that such sales were made pursuant to an agreement which was a part of the original transaction, but not inserted in the mortgage, that the mortgagor might sell the property in the ordinary course of business, but the proceeds thereof should be applied in payment of the mortgage debt. The fact of such sales, and that the proceeds were not so applied, of which the mortgagee had notice, is cogent, but not conclusive, evidence that it was the understanding of the parties to the mortgage, when it was made, that the mortgagor might so do. It was a question of fact for the trial court. To render the mortgage fraudulent, such must have been the understanding and intent of the parties at the time it was executed." It was determined that the finding of the trial court, that the mortgage was not fraudulent, could be sustained.

Another case in which the rule was enforced is Harris v. Spencer, supra; but the court says with relation to this sort of fraud, on page 144 of 130 Minn. (153 N. W. 126): "In any event this would be but *constructive fraud*, as distinguished from *actual fraud*. Constructive fraud in permitting a mortgagor of chattels to dispose of or use the mortgaged property would be ground for declaring the mortgage void as against other creditors, but it is not sufficient to support an attachment made on the ground that the defendant has disposed of his property with intent to defraud his creditors."

In the case of Berkner v. Lewis, supra, the court, with some difficulty, kept a chattel mortgage out of the operation of this rule. It held that the fact that the mortgagor was permitted to dispose of certain cattle covered by the mortgage did not make it fraudulent as to creditors, because there was no showing that the property used and disposed of by him was not exempt, and that it was immaterial to the creditors what agreements were made with respect to exempt property.

The rule in New York with reference to similar chattel mortgages is substantially identical with that in Minnesota. See Benedict v. Ratner, 268 U. S. 353, 45 S. Ct. 566, 69 L. Ed. 991. The Circuit Court of Appeals of the Second Circuit, in the case of Hammond v. Carthage, etc., Co., 8 F.(2d)

35, held that a mortgage to secure an issue of bonds covering both real and personal property, which was recorded as a real estate mortgage, was not invalid as to real estate because the mortgagor was permitted to retain possession of personal property and sell it and retain the proceeds. In the case of Brown v. Leo (C. C. A.) 12 F.(2d) 350, this decision is overruled because of the case of Benedict v. Ratner, supra, in which the Supreme Court of the United States held that, under the New York law, the transfer of book accounts as security for a debt, the transferor retaining the right to dispose of the accounts and to apply the proceeds to its own uses, was as to creditors fraudulent and void. The Court of Appeals states that in its decision in Hammond v. Carthage, supra, it had proceeded upon the theory that there was no actual fraud, but that the possession of the chattels by the mortgagor, being "strongly repugnant" to the common law, if coupled with a power to sell, in effect left no mortgage at all so far as the chattels were concerned. It construes the decision of the Supreme Court in Benedict v. Ratner, supra, as holding that, under the New York law, although there is no fraud in fact, such a mortgage is actually fraudulent, and therefore entirely void.

Regardless of whether the law of New York is correctly stated in Brown v. Leo, or not, I am satisfied that, under the laws of Minnesota, a mortgage upon real estate, which also includes personal property, and pursuant to which the mortgagor is expressly or by necessary implication permitted to remain in possession of personal property and to dispose of it, without being required to apply the proceeds upon the mortgage debt, is not void as a lien upon the real estate in the absence of actual fraud, and particularly where the mortgage has never been filed as a chattel mortgage or treated as a lien upon such personal property.

The best statement of the reason for the Minnesota rule is by Judge Mitchell in the case of Pierce v. Wagner, supra. He says: "That such an agreement reserves benefits to the mortgagor, and prejudices other creditors, seems to us too plain for argument. It ties up the property, so as to prevent its being reached by other creditors, and enables the mortgagor to go on with his business, and draw from it the means of conducting it, and of his own support, while the mortgage still remains unpaid. It opens the door for fraud, and permits the mortgagor to use the property for his own benefit, utilizing the mortgage as a shield against other creditors. Calling the mortgagor the mortgagee's agent does not help the matter.

"Where the mortgagor of a stock of merchandise is allowed to remain in possession, and sell the property at retail, in the ordinary course of business, the only rule that is just as to other creditors is that, in order to render the mortgage valid, the debtor must part with all right to appropriate the property or its proceeds to his own use during the existence of the lien of the mortgage. From the early case of Chophard v. Bayard, 4 Minn. 533 [Gil. 418], down to date, this court has rigidly adhered to the doctrine that a mortgage is void as to creditors which provides for the retention of mortgaged personalty by the mortgagor, accompanied with the power to dispose of it for his own benefit without satisfaction of the mortgage debt. The agreement between the parties in this case clearly comes within that rule. How such a scheme would or might be made to operate is very apparent. The mortgagor could, as was the fact in this case, continue and conduct his business precisely as if there was no mortgage in existence, support himself out of it, and so regulate the expenses of the business that there would be no surplus. It would thus take a year to pay off the mortgage, and at the end of that time, by borrowing another $1,000 to pay his license for the next year, and executing a new mortgage, he could continue his business indefinitely, in the meanwhile supporting himself out of it, while his property would be shielded by the mortgages from other creditors."

There is no express agreement in the trust deed in question here that the mortgagor shall not account for proceeds from the sale of flour, feed, etc., but it may be that the finding of the referee to the effect that that was intended and must be implied is justified, for obviously the trust deed contemplates a lien upon the plant, equipment, and personal property of a going concern, and no accounting was required by the trustee or bondholders at any time. However, under the law as stated in Horton v. Williams, supra, it appearing that there was no fraudulent intent, the subsequent consent of the mortgagee to the sale of a part of the mortgaged property would only operate to discharge the lien upon the articles sold, and would not avoid the mortgage. Furthermore, as has been pointed out, the Supreme Court of this state has differentiated between constructive fraud and actual fraud. The one instrument creates, in effect, two liens—one upon the real estate,

and one upon personal property. If the liens were created by separate instruments, no claim could be made that the instrument creating the lien upon the real estate was void as to creditors. In reason and common sense, it would seem that the invalidity of the lien upon the personalty, if void as to creditors because of constructive fraud, should not invalidate the lien upon the real estate, even though created by the same instrument. The reasons for the rule where a chattel mortgage is involved, as stated by Judge Mitchell, do not apply to the trust deed involved here, because it did not and could not put out of reach of other creditors the personal property used and disposed of in the ordinary course of the milling company's business. There was no agreement between the trustee, the bondholders, and the mortgagor that it should use raw material or manufactured products in such a way as to injure creditors. The disposition of the Supreme Court of this state has been to extend the rule no further than has already been done.

The order of the referee is reversed.